J-A27037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| P.K. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| M.K. | |
| Appellant | No. 510 WDA 2015 |

Appeal from the Order entered February 25, 2015
In the Court of Common Pleas of Washington County
Civil Division at No: 2014-246

BEFORE: BOWES, OLSON, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED JANUARY 07, 2016**

M.K. (Mother) appeals from the order entered February 25, 2015 in the Court of Common Pleas of Washington County (trial court) that awarded P.K. (Father) custody of their minor daughters, J.K. and G.K., who were born in December of 2007 and June of 2011, respectively. After careful review, we affirm.

The trial court provided the following procedural background:

[Father] and [Mother] are the parents of two minor children: [J.K.] who is seven years old, and [G.K.], who is three years old. Mother and Father were married on June 28, 2007. Prior to January 4, 2014, Mother, Father, and their two daughters resided as a family in the marital residence, located in Fredericktown, Pennsylvania. On January 4, 2014, Mother left the marital home with the children and moved to her parents' home in Indianola, Pennsylvania. Mother did not inform Father as to where she took the children. As a result of Mother's move, [J.K.] was unilaterally removed from her kindergarten class at the [Bethlehem] Center Elementary School.

Thereafter, on January 6, 2014, Mother obtained a temporary protection from abuse order, wherein Mother was temporarily granted primary physical custody of the children, and Father was temporarily granted one overnight per week with the children from Saturday at 4.00 p.m. until Sunday at 4:00 p.m. On January 23, 2014, Mother and Father agreed to continue the protection from abuse matter until September 25, 2014. On September 25, 2014, the protection from abuse matter was dismissed by agreement of the parties.

On January 10, 2014, Father filed a complaint for divorce against Mother, which contained a count for custody. On March 31, 2014, this [c]ourt appointed Child Custody Conference Officer William Speakman, ("CCCO Speakman") who conducted a custody conciliation conference with the parties and their attorneys on July 10, 2014 and September 11, 2014. On September 26, 2014, CCCO Speakman issued an Interim Order that granted Mother and Father shared legal custody of the children, and granted Father primary physical custody and Mother partial physical custody of the children for three weekends every month.

Thereafter, on September 29, 2014, Father text messaged Mother and told her that he had received the Interim Order, and that he wanted to retrieve the children. Mother responded that she had not received the Interim Order and that she would not do anything until she spoke with her attorney. Despite Mother's objection, Father contacted the Indianola Police Department and requested that they assist him in retrieving the children pursuant to the Interim Order. At approximately 8:30 p.m. that evening, at the children's bedtime, Father appeared at Mother's residence with members of the Indianola Police Department to obtain the children. Father ultimately took the two young girls back to his home in Fredericktown.

On October 2, 2014 Mother's attorney presented an emergency motion to this Court, requesting that the Interim Order be stayed based upon improper findings and remarks contained within CCCO Speakman's report, and that a custody trial *de novo* be scheduled. Based on the inappropriate commentary and reasoning contained in the Interim Order and report, this Court granted Mother's request, and stayed the Interim Order, as well as scheduled a pre-trial conference and custody trial *de novo*.

The custody trial *de novo* was originally scheduled for two days. However, due to the large amount of testimony and evidence, the trial continued for three more days, eventually concluding on February 11, 2015.

Trial Court Opinion and Order, 2/25/15, at 1-3.

The trial court's February 25, 2015 order granted Mother primary physical custody and Father partial physical custody three weekends per month for the remainder of the 2014-15 school year. After June 5, 2015, Mother and Father were to share primary custody of the children on a week-on/week-off basis until two days before J.K.'s first day of school for the 2015-16 school year. At that time, full physical custody would be granted to Father and the children would live with him full time and attend school in the Bethlehem Center School District. If Mother remained in the Indianola area, she would enjoy partial physical custody three weekends a month and two weekday evenings a month. If she returned to the Bethlehem Center School District Area, Mother and Father would share primary custody on a week-on/week-off basis.

Mother timely filed a notice of appeal from the custody order along with a Pa.R.A.P. 1925(a)(2) concise statement of errors complained of on appeal alleging twenty-two errors.

On appeal, Mother raises three issues for our review:

I. Did the trial court err or abuse its discretion in focusing its analysis on the facts and circumstances that existed in January of 2014 in lieu of the facts and circumstances that existed and were testified to at the time of trial in January and February of 2015, more than a year later?

> II. Did the trial court err or abuse its discretion in failing to properly consider Father's consent to Mother exercising primary custody of the minor children at her residence in Indianola, PA?
>
> III. Did the trial court err or commit an abuse of discretion in failing to examine those facts in evidence which supported Mother's claims for primary custody when analyzed through the factors enumerated in 23 Pa.C.S.A. § 5328 and ultimately in enter[ing] an order that is not in the best interest of the minor children?

Appellant's Brief at 11.

The scope and standard of our review of a custody order are as follows:

> In child custody matters, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*R.L.P. v. R.F.M.*, 110 A.3d 201, 207-08 (Pa. Super. 2015) (quoting *C.R.F., III v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012)). "When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted).

> In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In her first issue, Mother argues that the trial court abused its discretion by focusing on the facts and circumstances that existed in January of 2014 rather than those existing at the time of trial. Mother contends the trial court placed too much emphasis on her decision to move to Indianola from Fredericktown. Mother claims the trial court disregarded the fact that G.K. and J.K. have "been living in Indianola for over [one] year and have grown accustomed to the living arrangement, caregivers, custody schedule, school, friends and activities associated therewith." Appellant's Brief at 20-21.

Mother relies on *B.K.M. v. J.A.M.*, 50 A.3d 168 (Pa. Super. 2002) and *M.E.V. v. F.P.W.*, 100 A.3d 670 (Pa. Super. 2014) to support her argument that the trial court improperly disregarded events that occurred from the time of her relocation to the time of trial. Mother's reliance on each case is misplaced.

In *B.K.M.*, this Court found that the trial court's failure to consider facts arising from mother's relocation resulted in the failure to properly

consider all of the factors required by 23 Pa.C.S.A. § 5328(a). In particular, we noted:

> The [trial] court omitted consideration of the parental duties performed in Sweden, of any need for stability and continuity established for the Children during their time in Sweden, and of the overall best interests of the Children, inasmuch as those interests might involve maintaining the status quo established by their life in Sweden over the past two years, which for the most part occurred with Father's agreement.

**B.K.M.**, 50 A.3d at 175. Likewise, in **M.E.V.** we found that by relying on facts existing 17 months prior to the hearing the trial court "failed to provide the requisite contemporaneous review of the § 5328 factors." **M.E.V.**, 100 A.3d at 682.

In the instant case, unlike in **B.K.M.** and **M.E.V.**, the trial court **did** provide a contemporaneous review of the Section 5328 factors. Mother does not identify any Section 5328 factor not contemporaneously considered by the trial court. Contrary to Mother's unsupported assertion, the trial court fully considered the facts arising following Mother's relocation to Indianola, including her contention that the minor children had become accustomed to their new living arrangement. For example, the trial court stated:

> In reaching its decision, this [c]ourt's [o]pinion seriously considered what effect, if any, the move back to Fredericktown would have on the two girls. As the [o]pinion sets forth, the two children had lived in the Fredericktown area for the majority of their lives, until [Mother] left in January of 2014. Additionally, before [Mother] left the marital home, the children had spent a large amount of time with [Father's] family, who were their neighbors. As thoroughly noted in the [o]pinion, [Mother] admitted that the children love the marital home and the Fredericktown area. [Father] also stated that their seven year

- 7 -

old daughter, J.K., very much enjoyed attending the Bethlehem Center Elementary School and loved her kindergarten teacher.

The [c]ourt's [o]pinion addresses the connection the girls had with the Indianola area. Both girls had lived there for approximately one year at the time of the custody trial, and some of [Mother's] family members resided in the area. However, other than their maternal grandparents, the children did not spend time with [Mother's] family on a frequent basis.

In making the instant custody decision, the [c]ourt was fully aware that a move could have an impact on the two young girls. The [c]ourt purposefully crafted the custody order so that the children would not immediately move, and instead would gradually return to Fredericktown. . . . In consideration of all of the testimony and evidence that was presented in this matter, the [c]ourt determined that despite any short term effect that the move may have, it is in the best interests of the two young girls to return to Fredericktown.

Trial Court Rule 1925(a) Opinion, 4/21/15, at 6-7. Additionally, the trial court noted that it "was troubled that Mother would forego the preschool experience for [G.K.], where [G.K.] would be able to learn and be exposed to other children her age, and make friends, solely because Mother wants to spend time with her. Father testified that he would enroll [G.K.] in preschool." Trial Court Opinion and Order, 2/25/15, at 12.

As previously stated, we may reject the conclusions of the trial court only if they involve an error of law or are unreasonable in light of the certified record and, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge. Here, our review of the certified record indicates the trial court clearly considered the facts and circumstances following Mother's relocation to Indianola. Further, Mother

challenges only the weight and credibility accorded the evidence. Mother does not identify any Section 5328 factor the trial court did not address. As such, under our standard of review, we defer to the trial court on this issue and find that Mother's argument has no merit.

In her second issue, Mother contends that the trial court erred or abused its discretion by failing to properly consider Father's consent to Mother's exercise of primary custody at her Indianola residence. Mother argues that the temporary PFA obtained against Father constitutes Father's consent to Mother's permanent primary physical custody of the children in Indianola. Appellant's Brief at 29-30.

Mother relies on **Lee v. Carney**, 645 A.2d 1363 (Pa. Super. 1994), to support her assertion that the temporary PFA Order was sufficient to permanently change the custody arrangement and constitute Father's consent. In **Lee**, this Court upheld a consent order that directed the victim to pay money to the perpetrator of the abuse stating, "[a]s an appellate court, we do not judge the parties' wisdom in choosing mutually agreed upon terms which they seek to incorporate into an enforceable [o]rder of court to terminate an abusive situation." **Id.** at 1365. Mother's reliance on **Lee** is misplaced.

As the trial court explained:

> Initially, this court must note that the parties' agreement to extend [the] Temporary PFA was not an agreement for [Mother] to relocate. Instead, it was a temporary order that granted [Mother] interim custody of the children, among other relief.

[Mother] seemingly asserts that by entering the agreement, [Father] waived his right to ever object to [Mother's] relocation to Indianola with the children.

After the agreement was entered, the parties engaged in custody litigation, and appeared before a child custody conference officer on both July 10, 2014 and September 11, 2014. During these hearings, both parties made clear that they each desired primary physical custody of the children.

As [Father] never agreed to [Mother's] relocation, and in fact had filed for a custody complaint wherein he requested physical custody of the children and that they return to the Fredericktown area, there is simply no basis for [Mother's] argument that [Father's] agreement to a Temporary PFA constitutes any type of waiver. Moreover, [Mother] never filed a petition for relocation, and thus did not give [Father] the proper opportunity to object to the relocation as set forth in 23 Pa.C.S.A. § 5337. Section 5337 provides, in pertinent part:

**(b) General rule.** – No relocation shall occur unless:

(1) every individual who has custody rights to the child consents to the proposed relocation; or

(2) the court approves the proposed relocation.

Simply put, [Mother's] argument fails because [Father] never agreed that the children could relocate from Fredericktown to Indianola. In addition, [Mother] failed to follow the relocation procedure and consequently failed to provide [Father] with the proper opportunity to object.

Trial Court Rule 1925(a) Opinion, 4/21/15, at 5-6. We agree with the trial court's well-reasoned analysis and find that the record supports the conclusion that Father never consented to the children's relocation.

In her third issue, Mother asserts that the trial court erred by failing "to examine those facts in evidence which supported Mother's claims for primary custody when analyzed through the factors enumerated in 23

Pa.C.S.A. § 5328 . . . and ultimately in enter[ing] an order that is not in the best interest of the minor children." Appellant's Brief at 31. Mother claims that although the trial court addressed each custody factor, "the trial court's deductions and inferences from those findings are not reasonable." Appellant's Brief at 32.

As the trial court explained in its Rule 1925(a) Opinion, "[Mother] does not provide any basis or reasoning as to why this arrangement is against the best interests of the two young girls." Trial Court Rule 1925(a) Opinion, 4/21/14, at 8. Indeed, Mother argues only against the interpretation of the facts made by the trial court and the weight it accorded the evidence and testimony presented at trial. For example, in her brief, Mother argues that "the trial court, in support of its position, incorrectly states that Mother refuses to allow Father to FaceTime or video chat with the [c]hildren . . . . Further, the contrary, Mother testified that she allows Father to have daily phone contact with the children while in her care." Appellant's Brief at 32-33. Mother also claims:

> The trial court erred in its determination that Mother produced no credible evidence of Father's abuse. The trial court erred by focusing on the fact that a Final PFA Order was not entered against Father, using this as an indication that no abuse occurred. . . . Furthermore, the court inaccurately found that Mother's testimony was not credible.

Appellant's Brief at 34-35.

As stated, "with regard to issues of credibility and weight of the evidence, this Court must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand." *Johns v. Cioci*, 865

A.2d 931, 936 (Pa. Super. 2004). Our standard of review does not permit this Court to substitute our findings of fact for those of the trial court that are supported by the record. Moreover, "[a]ppellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion." ***R.L.P. v. R.F.M.***, 110 A.3d 201, 208 (Pa. Super. 2015) (quoting ***S.M. v. J.M.***, 811 A.2d 621, 623 (Pa. Super. 2002)).

The trial court's opinion thoroughly addressed each factor in Section 5328, considering the best interest of the children at each step. Mother's third issue challenges factual findings that we find are supported by the record. As such, mindful of our standard of review and after a careful reading of the record and analysis of the applicable law, we defer to the well-reasoned conclusions of the trial court and adopt as our own the trial court's best interest analysis set forth in its April 21, 2015 Rule 1925(a) Opinion at pages 7-25.

We find that the trial court did not commit error of law or abuse its discretion in entering the instant custody order. Therefore, Mother is not entitled to relief on any of her claims. In the event of any further proceedings, the parties shall attach a copy of the trial court's Rule 1925(a) Opinion to their filings.

Order affirmed.

J-A27037-15

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/7/2016

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
CIVIL DIVISION

P.K.,                                    )
                                         )
          Appellee,                      )
                                         )
                                         )   Nos.   2014-246
     v.                                  )          510 WDA 2015
                                         )
M.K.,                                    )
                                         )
          Appellant.                     )

**OPINION PURSUANT TO Pa.R.A.P. 1925(a)**

This matter comes before the Court upon M.K.'s appeal to the Superior Court from a custody opinion and order of this Trial Court dated February 25, 2015 (hereinafter referred to as "Opinion"). The Opinion granted P.K. and M.K. shared legal custody of the parties' two minor children, J.K. who is seven, and G.K. who is three, and granted M.K. primary physical custody of the children and P.K. was granted partial physical custody three weekends of the month through the remainder of the 2014-2015 school year. After June 5, 2015, during the summertime, the Court ordered that the parties' share primary custody of the children on a week-on/week-off basis. Then, this Court ordered that forty-eight (48) hours prior to J.K.'s first day of school for the 2015-2016 school year, that the children be returned to the Bethlehem Center School District and reside with Father, P.K., who would enjoy primary physical custody of the children, while M.K., if she remains in the Indianola area, would enjoy partial physical custody for three weekends of the month, and two weekday evenings a month. The Opinion further provided that if Mother M.K. returned to the Bethlehem Center School District Area, M.K. and P.K. would share primary custody of the two children on a week-on/week-off basis, throughout

the entire year. The Appellant M.K. filed an appeal of the Opinion to the Superior Court on or about March 24, 2015. Pursuant to the Rules of Appellate Procedure, Appellant also filed a Statement of Matters Complained of on Appeal. The Trial Court will address the various issues Appellant raises below.

## PROCEDURAL HISTORY

The procedural history of this case is set forth in the Trial Court's Opinion as follows:

> [Father] and [Mother] are the parents of two minor children: [J.K.] who is seven years old, and [G.K.], who is three years old. Mother and Father were married on June 28, 2007. Prior to January 4, 2014, Mother, Father, and their two daughters resided as a family in the marital residence, located in Fredericktown, Pennsylvania. On January 4, 2014, Mother left the marital home with the children and moved to her parents' home in Indianola, Pennsylvania. Mother did not inform Father as to where she took the children. As a result of Mother's move, Jordan was unilaterally removed from her kindergarten class at the Beth Center Elementary School.
>
> Thereafter, on January 6, 2014, Mother obtained a temporary protection from abuse order, wherein Mother was temporarily granted primary physical custody of the children, and Father was temporarily granted one overnight per week with the children from Saturday at 4:00 p.m. until Sunday at 4:00 p.m. On January 23, 2014, Mother and Father agreed to continue the protection from abuse matter until September 25, 2014. On September 25, 2014, the protection from abuse matter was dismissed by agreement of the parties.
>
> On January 10, 2014, Father filed a complaint for divorce against Mother, which contained a count for custody. On March 31, 2014, this Court appointed Child Custody Conference Officer William Speakman, ("CCCO Speakman") who conducted a custody conciliation conference with the parties and their attorneys on July 10, 2014 and September 11, 2014. On September 26, 2014, CCCO Speakman issued an Interim Order that granted Mother and Father shared legal custody of the children, and granted Father primary physical custody and Mother partial physical custody of the children for three weekends every month.
>
> Thereafter, on September 29, 2014, Father text messaged Mother and told her that he had received the Interim Order, and that he wanted to retrieve the children. Mother responded that she

2

had not received the Interim Order and that she would not do anything until she spoke with her attorney. Despite Mother's objection, Father contacted the Indianola Police Department and requested that they assist him in retrieving the children pursuant to the Interim Order. At approximately 8:30 p.m. that evening, at the children's bedtime, Father appeared at Mother's residence with members of the Indianola Police Department to obtain the children. Father ultimately took the two young girls back to his home in Fredericktown.

On October 2, 2014 Mother's attorney presented an emergency motion to this Court, requesting that the Interim Order be stayed based upon improper findings and remarks contained within CCCO Speakman's report, and that a custody trial *de novo* be scheduled. Based on the inappropriate commentary and reasoning contained in the Interim Order and report, this Court granted Mother's request, and stayed the Interim Order, as well as scheduled a pre-trial conference and custody trial *de novo*.

The custody trial *de novo* was originally scheduled for two days. However, due to the large amount of testimony and evidence, the trial continued for three more days, eventually concluding on February 11, 2015. Father is seeking shared legal and primary physical custody of the two minor children and that they return to the Beth Center School District. Father has proposed that if Mother returns to the Fredericktown area, physical custody could be shared with Mother on a 50/50 basis. Mother is seeking shared legal and primary physical custody of the two minor children and that they remain in Indianola, and continue to be enrolled in the Fox Chapel Area School District.

(Opinion, 2/25/15, Pages 1-3) (footnotes omitted).

## OPINION

In child custody matters, the Superior Court "may not reverse the decision of the trial court absent a gross abuse of discretion" and it "must accept findings of the trial court that are supported by competent evidence of record, as [its] role does not include making independent factual determinations." Bednarek v. Velazquez, 830 A.2d 1267, 1270 (Pa. Super. 2003); D.K. v. S.P.K., 102 A.3d 467, 478 (Pa. Super. 2014). Additionally:

> [W]ith regard to issues of credibility and weight of the evidence, [the Superior Court] must defer to the presiding trial judge who

3

viewed and assessed the witnesses first-hand. However, [it is] not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. [The Superior Court] may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

R.L.P. v. R.F.M., 2015 Pa. Super. 29 (Feb. 11, 2015). Appellant M.K. has filed twenty-two (22) matters complained of on appeal, most of which contain the same underlying argument. For purposes of clarity, the Trial Court has condensed and reorganized these matters where appropriate.[1]

1. Whether the Trial Court committed a legal error by entering an Opinion requiring the children to be returned to Washington County, when P.K. never filed an objection to M.K.'s relocation with the children to Allegheny County.
2. Whether the Trial Court erred by completely failing to consider the impact of making the children move from Indianola, Pennsylvania to Fredericktown, Pennsylvania by August, 2015, as the children have primarily resided in Indianola since January, 2014.
3. Whether the Trial Court erred by ordering the children to move from the Fox Chapel School District to the Bethlehem Center School District because it is contrary to the best interests of the children.
4. Whether the Trial Court erred by ordering a week-on/week-off custody schedule because it is not in the best interests of the children.
5. Whether the Trial Court erred by ordering a custody schedule that grants Appellant M.K. custody of the children for three (3) weekends per month if she fails to relocate to the Bethlehem Center School District because it is not in the best interests of the children.

Appellant M.K. argues that the Trial Court committed several errors in its Opinion by ordering that the children return to the Bethlehem Center School District for the 2015-2016 school year. First, Appellant asserts that the Court committed a legal error by requiring that the children return to Washington County because P.K. never filed an objection to M.K.'s relocation to Allegheny County. As the procedural history sets forth above, M.K. filed for a Temporary Protection from Abuse Order (hereinafter referred to as "Temporary PFA") against P.K. on

---

[1] The Court should note that at the time this opinion was written, the Trial Court did not have access to the transcripts of the custody proceedings.

4

January 6, 2014. On January 23, 2014, the parties appeared before this Court for a Final Protection from Abuse hearing, at which time the parties agreed to keep M.K.'s Temporary PFA against P.K. in effect for six (6) months, and that it would be dismissed in six (6) months if there were no violations. As part of the agreement, M.K. enjoyed primary physical custody of the children for five days of the week, and the children were to remain in Indianola, Pennsylvania, while P.K. agreed to enjoy partial physical custody of the children every weekend in Fredericktown, Pennsylvania. On January 10, 2014, during the pendency of the protection from abuse litigation, P.K. had filed a complaint for custody of the minor children.

Appellant M.K. appears to argue that because the parties agreed to a six month Temporary PFA wherein the children would reside in Indianola, that this Court lacks legal authority to order that the children return to Fredericktown, Washington County. Initially, this Court must note that the parties' agreement to extend Temporary PFA was not an agreement for M.K. to relocate. Instead, it was a temporary order that granted M.K. interim custody of the children, among other relief. M.K. seemingly asserts that by entering the agreement, P.K. waived his right to ever object to M.K.'s relocation to Indianola with the children.

After the agreement was entered, the parties engaged in custody litigation, and appeared before a child custody conference officer on both July 10, 2014 and September 11, 2014. During these hearings, both parties made clear that they each desired primary physical custody of the children.

As P.K. never agreed to M.K.'s relocation, and in fact had filed for a custody complaint wherein he requested physical custody of the children and that they return to the Fredericktown area, there is simply no basis for M.K.'s argument that P.K.'s agreement to a Temporary PFA constitutes any type of waiver. Moreover, M.K. never filed a petition for relocation, and thus did

5

not give P.K. the proper opportunity to object to the relocation as set forth in 23 Pa.C.S.A. §

5337. Section 5337 provides, in pertinent part:

> **(b) General rule.**--No relocation shall occur unless:
> (1) every individual who has custody rights to the child consents to
> the proposed relocation; or
> (2) the court approves the proposed relocation.

Id. Simply put, M.K.'s argument fails because P.K. never agreed that the children could relocate

from Fredericktown to Indianola. In addition, M.K. failed to follow the relocation procedure and

consequently failed to provide P.K. with the proper opportunity to object.

M.K. next argues that the Court failed to consider the impact that moving to

Fredericktown would have on the children. In making its custody decision, the paramount

concern of this Court was the best interests of the two children. This Court carefully addressed

all of the factors required by 23 Pa.C.S.A. § 5328(a)(1)-(16) that may have legitimately affected

the physical, intellectual, moral and spiritual well-being of the children. M.J.M. v. M.L.G., 63

A.3d 331 (Pa. Super. 2013) appeal denied, 68 A.3d 909 (Pa. 2013).

In reaching its decision, this Court's Opinion seriously considered what effect, if any, the

move back to Fredericktown would have on the two girls. As the Opinion sets forth, the two

children had lived in the Fredericktown area for the majority of their lives, until M.K. left in

January of 2014. Additionally, before M.K. left the marital home, the children had spent a large

amount of time with P.K.'s family, who were their neighbors. As thoroughly noted in the

Opinion, M.K. admitted that the children love the marital home and the Fredericktown area.

M.K. also stated that their seven year old daughter, J.K., very much enjoyed attending the

Bethlehem Center Elementary School and loved her kindergarten teacher.

The Court's Opinion addresses the connection the girls had with the Indianola area. Both

girls had lived there for approximately one year at the time of the custody trial, and some of

6

M.K.'s family members resided in the area. However, other than their maternal grandparents, the children did not spend time with M.K.'s family on a frequent basis.

In making the instant custody decision, the Court was fully aware that a move could have an impact on the two young girls. The Court purposefully crafted the custody order so that the children would not immediately move, and instead would gradually return to Fredericktown. The custody schedule will not change until the summer, wherein both parties will enjoy primary custody of the two girls on a week-on/week-off basis. It is not until the 2015-2016 school year that the children are to be returned to Fredericktown to reside full time. In consideration of all of the testimony and evidence that was presented in this matter, the Court determined that despite any short term effect that the move may have, it is in the best interests of the two young girls to return to Fredericktown. Accordingly, Appellant's argument that the Court erred by "completely failing to consider the impact of making the children move" is absolutely baseless.

Appellant next asserts that the Trial Court erred by ordering that the children return to the Bethlehem Center School District for the 2015-2016 school year because it is "contrary to the best interests of the children." The Court's Opinion contains a thorough and detailed best interests of the children analysis pursuant to the seventeen custody factors required by 23 Pa.C.S.A. § 5328(a)(1)-(16). In making its determination, this Court heavily considered the fact that the Fox Chapel Area School District is well known for its academic achievements. However, in light of all of the testimony and evidence presented during the numerous days of trial, including testimony from M.K. that J.K. enjoyed attending the Bethlehem Center School District and that both of the children adored the Fredericktown area, this Court found that it was in the best interests of the children that they return to primarily residing in Fredericktown.

7

Appellant's argument fails to set forth any cogent basis for why this arrangement is contrary to the best interests of the children. Accordingly, this issue lacks merit.

Next, the Appellant argues that a week-on/week-off custody schedule is contrary to the best interests of the children. This Court's Opinion ordered M.K. and P.K. to share physical custody of the children for this upcoming summer on a week-on/week-off basis, and that for the 2015-2016 school year P.K. shall have primary physical custody, but that if M.K. returned to the Fredericktown area, the parties would share physical custody of the two girls on a week-on/week-off schedule.

As Pennsylvania Courts have long recognized, "Every parent has the right to develop a good relationship with the child, and every child has the right to develop a good relationship with both parents." Pamela J. K. v. Roger D. J., 419 A.2d 1301, 1309 (Pa. Super. 1980). Based on the testimony presented during the custody trial, this Court believes that an equal physical custody arrangement in this matter will be extremely beneficial to the children and will promote a healthy familial relationship between the children and both P.K. and M.K.

M.K. does not provide any basis or reasoning as to why this arrangement is against the best interests of the two young girls. Prior to the separation of the parties, the children lived as a family with both P.K. and M.K. As described in the Opinion, this Court found that following the separation of the parties, both M.K. and P.K. perform parental duties and are involved in the daily lives of the children. Based on the voluminous testimony and evidence presented in this matter, this Court simply cannot fathom how permitting the children to spend an equal amount of time with P.K. and M.K. is adverse to their welfare. Despite M.K.'s objection to the arrangement, it is the belief and finding of this Court that an equal physical custody arrangement

8

is truly in the best interests of the two children. Because the Appellant's argument lacks merit, it should be denied.

Appellant M.K. further argues that the Trial Court erred by ordering a custody schedule where M.K. will enjoy custody of the girls for three (3) weekends per month if she chooses not to relocate to the Bethlehem Center School District because it is not in the best interests of the children. First, Appellant does not shed any light on why this arrangement is detrimental to the children. If M.K. returns to the Bethlehem Center School District, she will share custody of the two girls on a week-on/week-off basis with P.K. During this trial, M.K. testified that her daughters adored the Fredericktown area and the martial home, and that J.K. had very much enjoyed her kindergarten class at the Beth Center Elementary School.

It was blatantly apparent to this Court that Appellant M.K. simply does not want to return to the Fredericktown area, and that she wishes to remain living in Indianola, regardless of whether or not this is in the best interests of the children. As noted in the Opinion, M.K.'s Exhibit B contains a text message exchange wherein P.K. sends M.K. a photograph of a home for rent in Fredericktown. P.K. credibly testified that on several occasions he had shown M.K. pictures of homes for rent in the Bethlehem Center School District so that the parties could share equal custody of the children. M.K. responded with, "[S]top sending me this crap." Exhibit B.

This Court strongly believes that it is in the best interests of the children to return to the Fredericktown area. As stated in the Opinion, the Court found that the parties equally perform parental duties, and accordingly, both M.K. and P.K. are capable of caring for the children. Simply put, M.K. has the option of enjoying equal physical custody of the children if she puts their best interests ahead of her own and returns to Fredericktown. If she makes the voluntary choice to remain in Indianola, she will still enjoy partial custody of the children on a weekend

9

basis. Because Appellant has failed to raise any issue of merit, this argument should also be denied.

6. Whether the Trial Court erred in finding that M.K. and P.K. were equally likely to encourage and permit frequent and continuing contact between the children and the other parent, pursuant to 23 Pa. C.S.A. § 5328(a)(1), because this finding was against the weight of evidence presented at trial.
7. Whether the Trial Court erred by finding that there was no evidence of domestic violence perpetrated by P.K. against M.K., pursuant to 23 Pa. C.S.A. § 5328(a)(2), despite the fact that M.K. had obtained a Temporary PFA against P.K.
8. Whether the Trial Court abused its discretion by finding that M.K. did not provide adequate safeguards for the children.
9. Whether the Trial Court abused its discretion in finding that M.K. and P.K. equally performed parental duties pursuant to 23 Pa.C.S.A. § 5328(a)(8).

Appellant next argues that the Trial Court made several erroneous factual findings. First, M.K. asserts that the Trial Court erred in finding that M.K. and P.K. were equally likely to encourage and permit frequent and continuing contact between the children and the other parent, pursuant to 23 Pa. C.S.A. § 5328(a)(1). As explained above, the Superior Court cannot make any independent factual determinations where the findings of the Trial Court are supported by the record. S.W.D. v. S.A.R., 96 A.3d 396 (Pa. Super. 2014). In addition, "[W]ith regard to issues of credibility and weight of the evidence, [the Superior Court] must defer to the trial judge who presided over the proceedings and thus viewed the witnesses first hand." Johns v. Cioci, 865 A.2d 931, 936 (Pa. Super. 2004). Moreover, as this Honorable Court has explained,

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

R.L.P. v. R.F.M., 2015 Pa. Super 29 (Feb. 11, 2015)

During this custody trial, both parties testified that they liberally permitted the other parent to speak with the children over the telephone. The parties' daughter, J.K. has her own

10

cellular phone, and can contact either party when needed. Appellant's argument that this finding is "against the weight of evidence" is completely meritless and is contrary to the testimony that was presented throughout the five days of trial. This Court will note that although it found that both parties were equally likely to encourage communication with the other party, its Opinion also explains that M.K. has at times prohibited P.K. from FaceTiming, or video-chatting, with the children. Based on the totality of the evidence, the Court properly determined that the parties equally encourage and permit the children to contact the other parent. Accordingly, this issue should be dismissed.

Next, Appellant argues that the Trial Court erred by finding that there was no credible evidence that P.K. abused M.K. In ordering any form of custody, pursuant to Section 5328(a)(2), the Trial Court must consider and assess whether:

> The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

Id. As provided above, the Trial Court's findings must be upheld unless they are in conflict with record. See J.R.M. v. J.E.A., 33 A.3d 647 (Pa. Super. 2011).

As this Court's Opinion sets forth in detail, M.K. obtained a Temporary PFA against P.K. on January 6, 2014. By agreement of both parties, the Temporary PFA was continued until September 25, 2014 and the parties further agreed that this order would be dismissed so long as P.K. did not violate any of the conditions of the order. On September 25, 2014, this matter was dismissed.

Appellant argues that this Temporary PFA evidences that there was some type of domestic abuse perpetrated by P.K. against M.K. Importantly, a Final Protection from Abuse order was not entered against P.K. and thus there was never a finding of abuse. This Trial Court

11

did not address the merits of the Temporary PFA and accordingly did not take any evidence or testimony whatsoever. Rather, the parties agreed to continue the Temporary PFA for six months. P.K. credibly explained during the custody trial that he only agreed to the continuance because he was assured that he would have weekly periods of custody with his children who were suddenly taken away from him. This Court is extremely familiar with that matter, as this Court issued the order for M.K.

During this custody trial, M.K. testified that P.K. emotionally and physically abused her on numerous occasions. However, this Court did not find her to be a credible witness. M.K. initially claimed that P.K. physically abused her one day per week during the years of 2007 through 2010, but when further questioned by the Court, M.K. changed her story and said that it was only emotional abuse. Further, several witnesses testified, including paternal grandparents, M.K.'s sister, and M.K.'s father, that they had never observed P.K. threaten, abuse, or otherwise harm M.K.

In consideration of all of the evidence presented, including the demeanor of the witnesses in the delivery of their testimony, this Court determined that P.K. did not abuse M.K. Appellant has argued that this Court erred by determining that "there was no evidence of domestic violence perpetrated by [P.K.] against [M.K.]." However, this Court did not hold that "there was no evidence" of abuse, and this Court agrees that M.K. alleged multiple times throughout this matter that P.K. had abused her. This Court's Opinion clearly states that it did "not find any of [M.K.'s] allegations of abuse to be credible." There is a great difference between a judicial determination that no evidence had been presented in regards to an issue as opposed to a court finding that it did not find a witness to be credible. Based on the foregoing, this Court respectfully submits that this issue is baseless and should be dismissed.

12

Appellant M.K. further argues that the Court abused its discretion by finding that (1) M.K. failed to provide adequate safeguards for the children and (2) that P.K. and M.K. equally performed parental duties on behalf of the children. As noted above, an appellate court "may only reject the conclusions of the trial court if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." J.P. v. S.P., 991 A.2d 904, 906 (Pa. Super. 2010).

As explained at length in the Opinion, there was an incident at a custody exchange where M.K. did not provide a booster seat for the parties seven year old daughter, J.K. During this exchange, P.K. observed that M.K.'s vehicle did not have a proper booster seat for J.K., and so he text messaged M.K. M.K. responded that she did not have a booster seat, and M.K. further stated, "I don't know what a booster seat really does. It's the seat belt that matters." Exhibit B. During her testimony, M.K. explained that she lacked a booster seat because she was in a rental car, and that to remedy the situation she had her daughter sit on a pillow with a seat belt on. Both parties testified that Appellee P.K. ultimately took the booster seat from his vehicle and provided it to M.K. In addition, P.K. credibly testified that M.K. had failed to provide booster seats for the children on numerous occasions.

Appellant M.K. once again misconstrues the findings of this Trial Court. The Opinion does not state that M.K. has failed to provide safeguards for the children. Rather, the Opinion states that P.K. is more likely than M.K. to provide adequate safeguards for the children, and that the Court found that M.K's behavior demonstrated that she did not take the safety of the children seriously. This Court is well aware that under the Pennsylvania vehicle code, booster seats are required for children who are aged four (4) through eight (8). 75 Pa.C.S.A. § 4581 (a)(1.1). This Court determined that M.K.'s conduct proved that she was unconcerned about the safety of her

13

daughter. As M.K. openly admitted to failing to provide the booster seat on at least one occasion, and the text messages she admitted into evidence demonstrate that she did not recognize the importance of this safety mechanism, this Court did not abuse its discretion in determining that M.K. had failed to take the safety of the children seriously. Accordingly, this issue should be dismissed.

Next, M.K. takes issue with yet another factual finding by this Trial Court. Appellant M.K. argues that the Court abused its discretion by finding that M.K. and P.K. equally performed parental duties on behalf of the children. As the Opinion thoroughly explains, both M.K. and P.K. credibly testified to performing parental duties such as bathing the children, feeding the children, and playing with the children. In addition, P.K. is employed, and earns a salary to provide for the children, while M.K. is unemployed. Prior to the custody trial, both parties enjoyed physical custody of the children, with M.K. having the girls during the week, and P.K. having the children on the weekends, and as such, both parents were responsible for taking care of the children's everyday needs. There was absolutely no credible testimony introduced that P.K. had failed to perform parental duties while the girls were in his care. While it is true that M.K. had enjoyed a larger amount of physical custody of the girls than P.K. under the prior custody schedule, this Court believes that based on the evidence presented, the parties equally provided for the children. Because the Trial Court's finding is based on the evidence of record, Appellant M.K.'s argument is meritless.

> 10. Whether the Trial Court erred as a matter of law in failing to analyze 23 Pa.C.S.A. § 5328(a)(4).
> 11. Whether the Trial Court erred as a matter of law in failing to analyze 23 Pa.C.S.A. § 5328(a)(9).

14

Appellant argues that the Trial Court erred as a matter of law by failing to analyze Factor 4 and 9 as required by 23 Pa.C.S.A. § 5328. This Court is well aware that in ordering any form of custody, the "court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child," which includes the seventeen codified at Section 5238(a)(1)-(16). As the Honorable Superior Court has explained, "Section 5328(a) sets forth a list of [17] factors that trial courts must consider in a best interests of the child analysis in making any custody determination." D.K., 102 A.3d at 474 (internal citation omitted).

This Court analyzed every factor required by Section 5328(a)(1)-(16). On page 7 of the Opinion, the Trial Court placed Custody Factor 4 and Custody Factor 5 together because the Court believed they were interconnected, and could be analyzed together. Appellant claims that Factor 4 was ignored, however, the body of that paragraph clearly discusses the "need for stability and continuity in the child[ren]'s education, family life and community life." For example, under the paragraph in question the Opinion contains the following:

> The Court finds that Father is more likely to provide stability and continuity in the children's education, family life, and community life. The children had lived in Fredericktown, Pennsylvania all of their lives until they were removed by Mother on January 4, 2014. Jordan was enrolled in kindergarten at the Beth Center Elementary School. Since Mother's move, Jordan has been enrolled at the Hartwood Elementary School, which is located in the Fox Chapel School District.

> This Court is aware that the Fox Chapel School District is recognized for its academic achievements, and that many of its schools have been rated "Blue Ribbon" by the United States Department of Education. However, during cross-examination, Mother admitted that Jordan loved attending the Beth Center School District, that she enjoyed her kindergarten teacher, that her cousins attend the same school, and that her aunt is the school nurse. Mother also stated that the children adore the marital home and its surrounding area.

15

During direct-examination, Mother testified that she will not enroll Gabrielle in preschool because she "wants to spend more time with [Gabrielle.]" When directly questioned by the Court about this statement, Mother affirmed her belief that Gabrielle should stay at home with her instead of attending preschool. The Court is troubled that Mother would forego the preschool experience for Gabrielle, where Gabrielle would be able to learn and be exposed to other children her age, and make friends, solely because Mother wants to spend time with her. Father testified that he would enroll Gabrielle in preschool. The Court finds that this is an example of Mother putting her own wants before the best interest of her child.

(Opinion, Pages 7-8). Following this discussion, the remainder of the paragraph is dedicated to Custody Factor 5, the availability of extended family. It is apparent from a simple reading of this paragraph that the Court evaluated Factor 4. Because the Appellant's argument is baseless, it should be denied.

In addition, the Appellant M.K. asserts that the Trial Court failed to analyze Factor 9. On page 10 of the Opinion, the Trial Court once again placed the discussion of Factor 9 and Factor 10 together due to their corresponding nature. Appellant argues that Factor 9 was disregarded, yet the first sentence of the paragraph states, "The Court finds that Father is more likely to maintain loving, stable, consistent and nurturing relationships with the children that are adequate for their emotional needs." (Trial Court Opinion, Page 10). The remainder of this portion of the Opinion explains the Court's reasoning for this finding, and then analyzes Factor 10. Once again, it is obvious from a plain reading of the Opinion that the Court analyzed Factor 9 at length. As Appellant's argument lacks any basis, it should be denied.

12. Whether the Trial Court erred by finding that pursuant to 23 Pa.C.S.A. § 5328(a)(5), P.K.'s extended family is more available to the children than M.K.'s family.
13. Whether the Trial Court abused its discretion by finding that M.K. "unilaterally removed the children from the only home they had ever known," despite the fact that M.K. and the children had moved to Indianola on January 4, 2014 and M.K. obtained a Temporary PFA on January 6, 2014 which granted her primary custody of both children in Indianola, Pennsylvania.

16

14. Whether the Trial Court abused its discretion by finding that M.K. unilaterally and abruptly removed the children from Fredericktown, Pennsylvania, where M.K. had received a Temporary PFA two days after the separation, which granted her primary custody of the children.
15. Whether the Trial Court abused its discretion by finding that pursuant to 23 Pa.C.S.A. § 5328(a)(8), there was no evidence that P.K. had attempted to turn the children against M.K.
16. Whether the Trial Court committed an error of law pursuant to 23 Pa.C.S.A. § 5328(a)(10) by finding that P.K. is more likely than M.K. to attend to the physical, emotional, developmental, and special needs of the children.
17. Whether the Trial Court erred by finding that pursuant to 23 Pa.C.S.A. § 5328(a)(12) M.K. and P.K. are equally available to the children.
18. Whether the Trial Court abused its discretion by determining that M.K. refuses to allow P.K. to FaceTime with the children.
19. Whether the Trial Court abused its discretion pursuant to 23 Pa.C.S.A. § 5328(a)(15) by ignoring evidence that Father suffers from a mental condition.
20. Whether the Trial Court abused its discretion, and exceeded its legal authority pursuant to 23 Pa.C.S.A. § 5328(a)(16), by finding that M.K.'s parenting style could have a negative and long-term impact on the children.

Appellant claims that this Trial Court made a number of errors in its factual findings.

Due to the voluminous and repetitive nature of these alleged errors, the Court will address them

together below. Preliminarily, this Court will note that M.K.'s appeal is focused on requesting

that the Superior Court "render factual determinations different from those made by the trial

court, and to make different credibility and weight decisions." J.P., 991 A.2d at 908. As

explained above, the Trial Court's findings must remain undisturbed so long as they are

supported by the official record.

> [The Superior Court is] not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may not interfere with the trial court's factual conclusions unless they are unreasonable in light of the factual findings, and thus represent a gross abuse of discretion.

Cioci, 865 A.2d at 936.

Appellant asserts that the Trial Court erred by finding that "P.K.'s extended family is

more available to the children than M.K.'s family." During the trial, P.K.'s parents credibly

17

testified that they live a quarter mile away on the same street as P.K., who remains in the marital home, and that prior to the separation of the parties, they had spent a great deal of time with the children. P.K.'s brother also testified that he lived 500 yards from P.K. and that his family spent a lot of time with the children, which included celebrating birthdays and holidays. During the trial, M.K. testified that the majority of her family resides within the Indianola area. M.K.'s father testified that before the separation, he and his wife saw the children once a week. M.K.'s sister testified that she had only visited the martial home on ten (10) occasions in the past seven (7) years. Naturally, after M.K. took the children to Indianola, the children have been spending more time with M.K.'s side of the family.

Based on the evidence presented during trial, it was this Court's finding that P.K.'s family "has been consistently more available to the children than [M.K.'s] family, in terms of time spent with the children and their availability due to their close location to the marital residence." P.K.'s family members credibly testified that prior to the separation of the parties they had spent a lot of time with the children. On the other hand, M.K.'s mother and father, who based on the testimony presented were really the only family members of M.K. who had spent time with the children, were seeing the children once a week prior to the parties' separation. Based on the testimony, this Court concluded that P.K.'s family had been consistently more involved in the lives of the children as compared to M.K.'s family. Because this finding was simply based on the evidence that was presented, this Court did not abuse its discretion. As a result, Appellant's appeal should be dismissed.

Appellant M.K. next raises two issues pertaining to whether the Trial Court abused its discretion by finding that M.K. unilaterally removed the children from the only home they had ever known, despite the fact that M.K. and the children had moved to Indianola on January 4,

18

2014 and M.K. had obtained a Temporary PFA on January 6, 2014, which granted her primary custody of both children in Indianola, Pennsylvania. Appellant M.K. is correct that on January 6, 2014, she obtained a Temporary PFA from this Court that limited P.K.'s custody of the children to one day per week. On January 23, 2014 this Temporary PFA was amended so that P.K. would have physical custody of the children every weekend, and M.K. would have primary physical custody of the two girls during the week.

Appellant seems to argue that it was improper for the Court to find that M.K. unilaterally removed the children because two days after she moved with the children to Indianola she obtained a Temporary PFA against P.K. On January 4, 2014, days before M.K. obtained the temporary Protection from Abuse Order, M.K. removed the children from their home without informing P.K. that she and the children were suddenly moving to her father's home in Indianola. Based on M.K.'s conduct, the Court simply observed that the children were abruptly and unilaterally removed from the martial home. This Court must note that the children were never a protected party under the Temporary PFA and as a result it was not necessary for M.K. to remove the children from their home.

Appellant also argues that the Court erred by determining that the marital home was the "only home the children had ever known." During this trial, there was testimony that M.K. and P.K. had separated for a short time in the past, and that M.K. had taken the children to her father's home for a couple of weeks in 2011. Despite the fact that the children did live in their grandfather's home for a short while, this Court found that at the time M.K. left with the children, the marital home was the only consistent and stable home the children had ever known. Appellant apparently takes issue with the fact that the Court did not state that the children may recognize the Indianola residence as a home because the children have primarily been living

19

there since January 4, 2014. This issue is irrelevant, however, because this Court's Opinion clearly states that at the time of separation, which was January 4, 2014, M.K. removed the children from the only home they had ever known. Because this finding does not relate to any time period after the January 4, 2014 date, Appellant's argument has no basis and should be dismissed.

Appellant next asserts that the Trial Court abused its discretion by failing to find that P.K. had attempted to turn the children against M.K. First, Appellant provides no basis for this alleged error. Second, this Court was not presented with any credible evidence that P.K. speaks negatively about M.K. while in the presence of the children. While P.K. did admit to discussing the custody litigation with the two minor children, which is clearly improper, there was not any credible evidence presented that P.K. did this in an attempt to sway the children against M.K. The Court will note that based on this testimony, the Court added Paragraph 9 to the Opinion which prohibits M.K. and P.K. from discussing any custody litigation with either of their children. Because the Appellant has failed to allege an error, this issue should be dismissed.

Next, Appellant asserts that the Trial Court committed an error of law under 23 Pa.C.S.A. § 5328(a)(10) because it determined that P.K. was more likely than M.K. to attend to the physical, emotional, and developmental needs of the children. Appellant M.K.is simply alleging errors for any factual finding that she does not agree with. Based on the evidence presented, the Court determined that while M.K. and P.K. both provide love, care, and other essentials for the two girls, P.K. is more likely to attend to the above listed needs. For instance, during the trial, M.K. testified that she would not enroll G.K., the parties' three year old daughter, into preschool because M.K. "wanted to spend more time with her." Based on this comment and P.K.'s

20

assertion that he would enroll G.K. in preschool, the Court found that P.K. was more likely to attend to the girls' educational needs than M.K.

Moreover, throughout this trial there was a great deal of testimony presented in regards to the parties' differing parenting styles. Based on this evidence, the Court determined that while P.K. disciplined the children when necessary, M.K. does not correct the children when they misbehave. In consideration of the foregoing, the Court determined that P.K. was more likely to satisfy this factor than M.K. Because this finding was based on evidence presented during the trial, this issue should be denied.

Appellant M.K. raises yet another factual issue in her fishing expedition, which is an argument that the Trial Court erred in finding that M.K. and P.K. are equally available to the children. This is another mischaracterization of the contents of the Opinion. The Opinion states, "The Court finds that both [M.K.] and [P.K.] are capable of making appropriate child-care arrangements for the children." This Court assumes that the Appellant M.K. takes issue with the fact that P.K. works fulltime, while she has no employment, and therefore is always available. This Honorable Court has long recognized that "a parent's work schedule may not deprive that parent of custody if suitable arrangements are made for the child's care in his or her absence." Gerber v. Gerber, 487 A.2d 413, 416 (Pa. Super. 1985).

In the instant matter, P.K. testified that if he was granted primary custody, G.K. would likely be placed into daycare. P.K. credibly stated that he had researched daycare facilities, and introduced information about a daycare located within two miles of his home. Furthermore, P.K.'s parents, who live a quarter of a mile away from P.K., both testified that they would be ready, willing, and able to care for the girls at any time. Because the Court's finding was based on the facts as they were presented at trial, this issue should be dismissed as meritless.

21

Appellant next argues that the Trial Court abused its discretion by finding that M.K. refuses to allow P.K. to FaceTime, or video-chat, with the children. During the trial, P.K. credibly testified that M.K. prohibits him from FaceTiming with the children. This Court found P.K.'s testimony regarding FaceTime to be credible. Exhibit B, which M.K. introduced, contains a lengthy text message exchange between M.K. and P.K. regarding FaceTime. On page 131 of that document, P.K. requests to FaceTime with the children, and M.K. responds, "NO". Based on the evidence presented, this Trial Court found that M.K. does in fact refuse to allow P.K. to FaceTime with the children while they are in her custody. As this finding was wholly based on the facts presented as well as the credibility of the witnesses, this issue should also be dismissed.

Appellant further argues that the Trial Court committed an abuse of discretion pursuant to 23 Pa.C.S.A. § 5328(a)(15) because it ignored evidence that P.K. suffers from a mental illness. As stated above, this Court is aware that it is required to weigh and assess all of the seventeen factors codified in Section 5328(a)(1)-(16). During this trial, M.K. had continually implied that P.K. was prescribed Valium, an anti-anxiety medication, and Brintellix, an anti-depressant. However, there was absolutely no credible testimony or evidence that P.K. was diagnosed with any mental disorder. P.K. credibly testified that he does not suffer from any mental conditions. Based on the fact that this Court was not presented with any evidence whatsoever that P.K. was ever diagnosed with a mental illness, the Court determined that P.K.'s mental issue was not an issue in the instant custody proceeding. As the Trial Court's finding was based on the evidence, or lack thereof, presented during this custody trial, Appellant's argument is baseless and should be denied.

Next, Appellant M.K. asserts that this Trial Court both abused its discretion and exceeded its legal authority in finding that M.K.'s parenting style could have a negative and long-term

22

impact on the children. First, this Court must emphasize that it did not find that M.K.'s parenting style <u>will</u> have a harmful effect on the children, but rather that her laissez-faire style of parenting <u>could</u> have such an effect. Throughout the trial, there was an abundance of testimony presented regarding the parties' differing parenting styles. M.K. testified at length regarding her son, J.W., who is currently twenty four (24) years old and is a half-brother to G.K. and J.K. P.K. and M.K. both testified that J.W. had been in serious criminal trouble, both when he was a minor and after he turned 18, and when asked about it during this custody trial, M.K. appeared apathetic and did not acknowledge the significance of her son's legal woes. M.K. also testified that she was unable to punish or otherwise reprimand J.W. for getting into trouble. M.K. stated that while her son was a minor and lived with her, he was barely at the marital residence and he spent the majority of nights at an underage girl's home. Based on M.K.'s prior behavior, the Court determined that it is possible that her parenting style could have a detrimental effect on her two young girls. Because the Court's observation was based on the evidence presented at trial, the Court did not abuse its discretion.

Section 5328(a) requires the trial court to consider, assess, and weigh any factor that is relevant to the best interest of the child at issue. These factors are not limited to the seventeen listed. As this Honorable Court has explained, the "ultimate consideration for the court is a determination of what is in the best interest of the child, and all other considerations are deemed subordinate to the child's physical, intellectual, moral, and spiritual well-being." <u>Nonnenman v. Elshimy</u>, 615 A.2d 799, 801 (Pa. Super. 1992). In this matter, the Court was presented with a large amount of testimony regarding M.K.'s parenting of J.W. as well as M.K.'s indifferent style of parenting towards the two girls. The Court, concerned about the well-being and best interests of the two young children, observed that M.K.'s style of parenting could prove detrimental to the

23

girls in the future. As the Court made this finding in consideration of the best interests of the children, the Court did not exceed its legal authority, and the Appellant's argument should be dismissed.

21. Whether the Trial Court erred by finding that M.K. learned that P.K. had a tenant living in his home at the time the parties appeared before Child Custody Conference Officer Speakman.

The Trial Court acknowledges that it did err in its Opinion by stating that M.K. had first learned that P.K. had a tenant living in his home at the time the parties appeared before Child Custody Conference Officer Speakman. Based on a review of the record, M.K. first learned that P.K. had a tenant in the basement during this custody trial. However, this Court submits that this error is de minimis and does not affect the outcome or merits of this matter.

22. Whether the Trial Court erred by granting P.K. primary physical custody of the children where the evidence presented during trial demonstrate that P.K. had an unrelated adult man living in his home, and that P.K. had failed to file an Affidavit of Household as required by 23 Pa.C.S.A. 5329(a).

Lastly, Appellant M.K. asserts that the Trial Court erred by granting P.K. primary physical custody of the girls in spite of the fact that he had an unrelated man living in the basement of his home, and because he failed to file an Affidavit of Household as required by 23 Pa.C.S.A. 5329(a). A party seeking custody must file and serve with the custody complaint "a verification regarding any criminal or abuse history of the petitioner and anyone living in the petitioner's household." 231 Pa. Code § 1915.3-2. On May 6, 2014, P.K. filed a Criminal Record/Abuse History Abuse Verification for himself. This document did not contain any reference to P.K.'s tenant, F.A.

This Court's Opinion addresses P.K.'s failure to file a proper Criminal Record/Abuse History Abuse Verification for every person who resides in his home. The Appellant argues that

P.K.'s error should have prohibited this Court from granting him primary physical custody of the two girls. First, the Court recognized that P.K. should have done this. Second, there was no credible evidence presented that F.A. was a danger to the girls, or that he resided in the home during the same time the two children did. Lastly, P.K. was not granted primary physical custody; M.K. has the option of having equal shared custody if she returns to the Fredericktown area. Because Appellant's argument is meritless, it should be dismissed.

## CONCLUSION

For the reasons set forth above, and because the issues raised by M.K. lack any merit other than Issue 21, the Trial Court respectfully submits that the Opinion of the Trial Court dated February 25, 2015 should be affirmed and Appellant's appeal dismissed.

DATE:                                              BY THE COURT:


4-20-15                                    _Valarie Costanzo_, J.
                                                  Valarie Costanzo

25