487 A.2d 413

**James E. GERBER, Appellant,**

v.

**Marie P. GERBER.**

Superior Court of Pennsylvania.

Argued Sept. 20, 1984.

Filed Jan. 18, 1985.

Daryl J. Gerber, Palmyra, for appellant.

Philip H. Feather, Annville, for appellee.

Before WICKERSHAM, WIEAND and HESTER, JJ.

WICKERSHAM, Judge:

James E. Gerber appeals from the order of the Court of Common Pleas of Lebanon County granting primary custody of his son, James E. Gerber, Jr., to his wife, Marie P. Gerber.

James and Marie Gerber were married on May 20, 1978. It was Marie's second marriage and James' first. Their child, James, Jr., the subject of this custody dispute, was

born on August 1, 1979. In November of 1982, Marie left the marital home, taking young James [hereinafter "Jimmy"] with her.

James filed a divorce complaint on January 7, 1983, seeking custody of the couple's son in count III thereof. Following a custody hearing in the lower court on November 22, 1983, the Honorable G. Thomas Gates issued an order granting custody of the child to Marie, appellee herein. This timely appeal followed.

> (O)ur law has long recognized that the scope of review of an appellate court reviewing a custody matter is of the broadest type ...[.] Thus, an appellate court is not bound by deductions or inferences made by a trial court from the facts found; ... nor must a reviewing court accept a finding which has no competent evidence to support it ...
>
> ....
>
> (W)e have recognized that the trial judge is in a position to evaluate the attitude, sincerity, credibility, and demeanor of the witness. Because we are not in such a position, we have recognized that a trial judge's determination of custody should be accorded great weight. *Only where we are constrained to hold that there was a gross abuse of discretion should an appellate court interfere with the decisions of the hearing judge.* (Citation omitted; emphasis added.).

[*Commonwealth ex rel. Spriggs v. Carson*] 470 Pa. [290] at 296, 368 A.2d [635] at 637 [1977].

Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support the trial court's factual conclusions, but may not interfere with those conclusions *unless they are unreasonable in light of the trial court's factual findings. Bohachevsky v. Sembrot,* 368 Pa. 228, 81 A.2d 554 (1951); and, thus, represent a gross abuse of discretion, *Carson.*

*Commonwealth ex rel. Robinson v. Robinson,* 505 Pa. 226, 237, 478 A.2d 800, 806 (1984) (emphasis in original).

With this standard in mind, we must thoroughly review the record to determine whether the lower court abused its discretion in granting custody of Jimmy to appellee.

■■■■ In cases involving custody of a minor child, the controlling question and paramount concern of the court is the best interests of the child; all other considerations are deemed subordinate to the child's physical, intellectual, moral, and spiritual well-being. *In re Davis*, 502 Pa. 110, 465 A.2d 614 (1983); *K.L.H. v. G.D.H.*, 318 Pa.Super. 330, 464 A.2d 1368 (1983); *Hall v. Mason*, 316 Pa.Super. 160, 462 A.2d 843 (1983). Instantly, the lower court found that Jimmy's best interests would best be served by allowing him to remain with his mother. Appellant avers that this decision was against the weight of the testimony. We disagree.

The lower court considered a number of factors and compared and contrasted the relative merits of each parent. The lower court found that both James and Marie are "loving and capable parents." Lower ct. op. at 3. This is thoroughly supported by the record.

Further, it is clear that both parties are in relatively the same financial condition and are both able to adequately provide for the child. Lower ct. op. at 4. Appellant argues, however, that he is better able to manage his resources, as indicated by the fact that he has paid all of the couple's joint obligations as well as child support, whereas appellee has failed to pay a number of her own bills. Brief for Appellant at 12–13. While there is some evidence to this effect in the record, we do not believe that this establishes that appellant's financial condition is obviously superior to appellee's. Furthermore, appellant does not argue, nor is there any evidence in the record, that appellee's financial condition has had, or will have in the future, an adverse effect on Jimmy. Thus we find that both parties are financially able to provide for the child and any differences in their respective financial conditions are irrelevant to the instant custody determination. *See Kessler v. Gregory*, 271 Pa.Super. 121, 412 A.2d 605 (1979) (Unless the income of

one party is so inadequate as to preclude raising the child in a decent manner, the matter of relative incomes is irrelevant).

Marie Gerber resides with her son in a second floor apartment in Lebanon. It consists of a living room, kitchen, bedroom, and bathroom. The home study report indicates that the apartment is spacious and comfortably furnished. The lower court found these living facilities to be adequate. Lower ct. op. at 4. At the time of the hearing, appellant was living in his parent's home, which the court found to be adequate. Appellant expresses concern with the court's reference to the temporariness of this arrangement. That is, the court noted that appellant testified that his living arrangements would change when he married his girlfriend, Donna. The court stated that "we have no idea of what living arrangements will be available for the child when Mr. Gerber is financially stable and married to his present girlfriend." Lower ct. op. at 4–5. We do not believe, however, that the court found this uncertainty to be important. Rather, it is clear that the court decided that both present living arrangements were adequate. Thus, we feel that this factor was not determinative of the outcome of this dispute.

The main points of contention between the parties seem to be which parent has been more involved in the child's upbringing and which of them will be more available to him on a day-to-day basis. In this regard, appellant avers that he did most of the meal preparation and housework during the couple's marriage. He also alleges that he toilet-trained Jimmy, takes him on outings, includes him in his athletic activities, and teaches him a variety of things. Appellant testified that appellee cooked very few meals for Jimmy throughout their marriage and that she participated in very few social, athletic, educational, or other activities with the child. While the transcript does reflect such testimony, the record also contains contradictory evidence. Marie testified that it was she, along with Jimmy's babysitter, who was responsible for Jimmy's toilet training. This was verified

by the babysitter. Furthermore, appellee testified that she makes breakfast for Jimmy every morning before taking him to the babysitter, and on days when she does not have to be at work until 1:00 p.m., she also makes him lunch. Marie also testified that she has taken Jimmy to the playground or to the park to play ball on a number of occasions. The home study report indicates that appellee has worked with Jimmy on his ABC's, reads to him, and participates in a number of activities with him. Thus, there is competent evidence in the record that contradicts appellant's allegations that he shows more concern for Jimmy's well-being than appellee.[1] *See In re Custody of Pearce,* 310 Pa.Super. 254, 456 A.2d 597 (1983) (hearing judge as factfinder is in best position to evaluate the sincerity and credibility of the witnesses; his findings must be supported by competent evidence).

Appellant also avers that Marie's work schedule greatly restricts the amount of time she can spend with Jimmy and results in Jimmy being cared for by a babysitter for much of the day. Marie is employed by Radio Shack. She works either from 10:00 a.m. to 6:00 p.m. or from 1:00 p.m. to 9:00 p.m. Appellee employs a full-time babysitter to look after Jimmy when she is at work. Appellant points out

[1]. With regard to appellee's lack of concern for Jimmy, appellant points to Marie's relationship with her other son. Marie was married previous to her marriage to appellant. That marriage produced one son, Michael. When Marie and her first husband separated, she voluntarily gave custody of Michael to her husband. Appellant testified that appellee never visits Michael, even though he lives only a short distance away. Appellant argues that it is contradictory for Marie to declare that she will be a good mother to Jimmy when she has ignored her parental duties to her first child.

Appellee explained that at the time of her separation and divorce from her first husband, she felt she was both financially and emotionally unable to take care of Michael. We do not agree with appellant that appellee's decision to give her first husband custody of Michael indicates her lack of concern or inability to care for Jimmy. In fact, the record reflects that Marie is a fit parent who has provided appropriate care for Jimmy. Appellee's past conduct with regard to Michael is not relevant to this custody dispute. *See Hall v. Mason,* 316 Pa.Super. 160, 462 A.2d 843 (1983) (a parent's ability to care for a child must be determined as of the time of the custody hearing, not as of an earlier time).

that he works from 6:00 a.m. to 2:30 p.m. and therefore has more time available to be with Jimmy. As the lower court notes, however, appellant participates in many athletic and other activities which demand his absence from home several nights a week. On these evenings, Jimmy would be cared for by a babysitter. Thus, it seems that *both* parents are sometimes unavailable to care for the child. Therefore, we believe that appellant over-emphasizes appellee's reliance on babysitters and understates his own rather full schedule. Furthermore, a parent's work schedule may not deprive that parent of custody if suitable arrangements are made for the child's care in his or her absence. *K.L.H. v. G.D.H., supra,* 318 Pa.Super. at 339, 464 A.2d at 1374. *Also see, In re Custody of Temos,* 304 Pa.Super. 82, 110–11, 450 A.2d 111, 125 (1982). In this case, it is clear that Jimmy is properly cared for while his mother is at work.

■ The lower court seemed to place the most emphasis on the fact that Marie has had continuous custody of Jimmy since birth and since separation. Lower ct. op. at 5. It appears that both James and Marie are loving parents and are both capable of caring for Jimmy. Nevertheless, Jimmy has lived with his mother since birth and Marie has had custody of Jimmy during the two years following the couple's separation. A court must consider the importance of continuity in a child's life and the desireability of the development of a stable relationship with an established parental figure and a known physical environment. *See In re Custody of Temos, supra.* Instantly, the lower court found, and we agree, that appellee has established a successful custodial relationship and that this stability should not be disturbed. *See Harner v. Harner,* 330 Pa.Super. 343, 479 A.2d 583 (1984); *In re Custody of Phillips,* 260 Pa.Super. 402, 394 A.2d 989 (1978).

■ The lower court did not abuse its discretion in maintaining the status quo by awarding custody of Jimmy to appellee.[2]

Order affirmed.

**2.** In his second issue, appellant avers that the lower court opinion did not give a complete explanation of the reasons for the award of custody to appellee. We disagree. The court adequately discussed the facts and the testimony presented by the parties. The court addressed the living arrangements, work schedules, financial condition, and attitudes of each parent. The court was impressed with the mother's candor and credibility. Furthermore, the court also considered the importance of maintaining stability in the child's life in its decision to maintain the status quo. We find that the lower court opinion was adequate. *See Commonwealth ex rel. Debeary v. Debeary*, 310 Pa.Super. 137, 456 A.2d 221 (1983).