J-S24026-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| J.W.I., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| H.A.I. | : | No. 1955 MDA 2017 |

Appeal from the Order Entered, November 17, 2017,
in the Court of Common Pleas of York County,
Civil Division at No(s):  2006-FC-002108-03.

BEFORE:  OLSON, J., KUNSELMAN, J., and MUSMANNO, J.

MEMORANDUM BY KUNSELMAN, J.:                **FILED JUNE 28, 2018**

In this matter, J.W.I. (Father) appeals the modification of his physical custody of his 11-year-old daughter, who has special needs.  Upon the request of H.A.I. (Mother), the trial court reduced Father's physical custody from shared to partial; legal custody remains shared.  After careful review, we find no abuse of discretion and affirm accordingly.

On November 15, 2017, the trial court held a hearing on Mother's petition to modify the parties' long standing arrangement of shared physical custody.  Mother had previously sought primary physical custody as recently as 2013.  At that time, the trial court denied her request, opting to keep the arrangement the same.  Since then, the parties continued to experience difficulties co-parenting.  The subject of these proceedings is the parties' 11-year-old daughter, C.I.  The daughter suffered a stroke *in utero* and is

developmentally delayed as a consequence. She did not speak until she was four years old. MRI scans revealed that she has use of approximately half of her brain. Moreover, she presents weakness on the right side of her body. She was in a neurological support class in the fifth grade, where she achieved high marks. Mother argues that modification of shared custody is warranted because Father has failed to fully participate in the child's life, and as such, the child is not living to her potential.

Father is an electrician. Testimony revealed that he worked Monday through Friday, 6:00 a.m. to 2:00 p.m. During his custodial period, which he exercised on a week-on-week-off basis, the child resided in the home of Paternal Grandmother during the school week and in Father's apartment during the weekends. On his custody days, Father picked the child up from school and took her to Paternal Grandmother's where he stayed until around the child's bedtime at 8:00 or 9:00 p.m. Paternal Grandmother made dinner, helped with homework, assisted with brushing the child's teeth and showering, and finally put the child to bed. Around this time, sometimes before and sometimes after, Father would leave to go to his own apartment. In the morning, Paternal Grandmother drove the child to school.

The trial court's order reduced Father's shared custody to partial custody – alternating weekends plus an additional weeknight visit each week. The weeknight visit does not include an overnight. The court further ordered the parties to resume the week-on-week-off shared custody schedule during the summer. Father presents this timely appeal.

He raises the following issues for our review, which we have reordered for ease of disposition.

> 1. Did the trial court err by finding that Father had not fulfilled his parental duties in the months prior to trial in light of Father's debilitating surgery in February 2017 and his required convalescence?
>
> 2. Did the trial court err in its analysis of the custody factors pursuant to 23 Pa.C.S.A. § 5328, in finding that said analysis warranted a change in the long-standing equal physical custody arrangement?
>
> 3. Did the trial court err by changing the equal physical custody schedule and awarding Mother majority physical custody as insufficient evidence was produced at trial demonstrating the existing long-standing arrangement did not serve the best interest of the child?
>
> 4. Did the trial court err in utilizing the change in Father's work schedule as one of the bases for alternating the equal physical custody schedule?

Father's Brief, at 5-6.

Our scope and standard of review of an appeal from a custody order is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

***V.B. v. J.E.B.,*** 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

We may dispose of Father's first issue instantly. Father argues that the trial court held against him the fact that he temporarily could not fulfill parental duties after he underwent a surgery that required a convalescence period. While the trial court concluded that Father abdicated his parental role to his mother, the Paternal Grandmother, the court did not reach this conclusion on account of the surgery and Father's recovery time. In its opinion pursuant to Pa.R.A.P. 1925, the trial court dismissed this notion.

> The [trial court] entirely disagrees with this characterization…. Father testified that he was able to reengage with his daughter after his surgery, returning to normal day-to-day activities, at the beginning of the 2017-2018 school year. [] [The trial court] did not take into consideration the time period that Father was recovering over the summer of 2017 from his surgery to change the primary custody during the school year. Rather, the [trial court] looked at this school year…and found that it is in the best interest of the child for primary physical custody to be with Mother during the school year.

Trial Court Opinion (T.C.O.), 12/16/17, at 5-6 (citation to transcript omitted). Thus, it is clear that the trial court did not penalize Father for his temporary inability to fulfill his parental obligations while he recovered from surgery.

Father's remaining issues pertain to both specific and general aspects of the custody analysis mandated by § 5328(a). Father argues that the trial court should have continued the previous arrangement given its long-standing nature. He claims he did not abdicate his parental role, but merely made proper child care arrangements as authorized under the custody statute.

Additionally, he surmises, the trial court's decision is against the weight of the evidence. We discuss these "inextricably intertwined" contentions together, just as Father does in his brief. **See** Father's Brief, at 16.

Father argues that we must view this case against the "backdrop" of the previous custody litigation, including the findings the trial court made in 2013, as well as this Court's decision affirming those findings. **See H.A.I. v. J.W.I.,** 5 MDA 2014, 2014 WL 10896813 (Pa. Super. 2014) (unpublished memorandum). Five years ago, the trial court denied Mother's request for primary custody. We affirmed. In doing so, we observed the trial court's finding that the child, given her special needs and her age, did not respond well to changes in her routine. **Id.**, at *14. We also noted the close relationship the child – then 8 years old - had with Paternal Grandmother. **Id.**

Father cites to our previous memorandum and observations. **See** Father's Brief, at 38. He calls the trial court's oversight of these facts "grotesquely disturbing." **Id.**, at 37. He further describes the trial court's present decision as "cavalier" because the court left "completely unaddressed" the impact the decision would have on the child. **Id.**, at 38. It seems Father desires us to impose upon the trial court a "law of the case" rule regarding prior custody findings.

We disagree. Custody law is not the law of inertia. We do not force petitioners and custody courts to obey the status quo in perpetuity absent a showing of some change. Rather, "[u]pon petition, a court may modify a custody order to serve the best interest of the child." 23 Pa.C.S.A. § 5338(a).

This provision codifies the standard set forth by our Supreme Court in **Karis v. Karis,** 544 A.2d 1328, 1332 (Pa. 1988)("A petition for modification of a partial custody to shared custody order requires the court to inquire into the best interest of the child regardless of whether a 'substantial' change of circumstances has been shown"). **See** 2010 Comment to §5338.

Similarly, there is no presumption that custody shall be awarded to a particular parent. **See** 23 Pa.C.S.A. § 5327(a). In other words, neither parent maintains the high ground when defending against a custody modification. The legislature has only mandated that a court may modify a custody order to serve the best interests of the child. **See** 23 Pa.C.S.A. § 5338. It placed upon neither parent an initial burden to establish that **modification** is in the best interests of the child. This situation is markedly different from relocation cases, where the legislature explicitly provided that the party moving shoulder the burden of proof. **See** 23 Pa.C.S.A. § 5337(i).

Contrary to Father's argument, had the trial court not conducted a new, contemporaneous review of the custody factors under § 5328(a) in response to Mother's petition, its decision would have been erroneous. **See M.E.V. v. F.P.W.**, 100 A.3d 670, 682 (Pa. Super. 2017) (holding that the trial court failed to provide the requisite contemporaneous review of the § 5328 factors in determining whether to modify a 17-month-old custody order).

Finally, to the extent our custody law demands homage to the custody arrangement's status quo, the same is explicitly contemplated by § 5328(a)(4), which requires the court to consider "the need for stability and

continuity in the child's education, family life and community life." Reverence for "how it has been" is implicitly contemplated by other factors as well, e.g., § 5328(a)(10): "Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child." The status quo might be a perfectly fine basis for denying a modification, but that decision must be ascertained through a proper analysis of the factors identified by § 5328(a).

With these guideposts in mind, we conclude that the trial court conducted a proper, contemporaneous review of the case under § 5328(a). To the extent that the child needed a strict routine, complete with Paternal Grandmother's involvement, such a need has evidently dissipated over the last several years. As is the trial court's exclusive prerogative, the court afforded these facts little weight in the instant analysis. Custody orders are fluid by their nature; an application of the custody factors must be able to adapt to the child's growth and change.

In terms of the need for stability and continuity, the trial court found factor 4 favored neither parent. *See* 23 Pa.C.S.A. § 5328(a)(4). The court determined that both parties exaggerated minor issues – e.g., the stepfather's disciplinary tactics, and the child's exposure to Father's girlfriends. The court found both parents have done a good job keeping their daughter's life stable.

In terms of the Paternal Grandmother's role in this child's life, the trial court found that this relationship was not as essential as it had been previously. Specifically, the court found that the Paternal Grandmother

frustrates the daughter's attempt to learn and achieve independence. To the extent that the Paternal Grandmother performs "long-standing" parental duties – i.e., cooking, bathing the child, putting her to bed, waking her up, driving her to school – the trial court determined that those tasks were detrimental to Father's case.

The Paternal Grandmother, whose devotion to the child bleeds through the record, is simply not a party to this case. And if she was, there would be a presumption – embossed in the custody statute – that custody should be awarded to the parent. **See** 23 Pa.C.S.A. § 5327(b). In other words, the court is not bound by its previous recognition of the Paternal Grandmother's altruism. And to the extent that she would have hypothetically been placed on equal standing with Mother, there would still have been a presumption that Mother should have primary custody.

Having determined that the trial court did not need to adhere to the long-standing arrangement between Paternal Grandmother and child, we address Father's alternative argument. He counters that the custody factor § 5328(a)(12)(relating to the party's ability to make appropriate child-care arrangements) is the codified proposition that a parent's work schedule may not deprive that parent of custody if suitable arrangements can be made. **See** Father's Brief, at 36.

For support, Father cites to a line of cases decided under since-repealed sections of our custody law. **See Gerber v. Gerber**, 487 A.2d 413, 416 (Pa. Super. 1985); **and see Wiseman v. Wall**, 718 A.2d 844 (Pa. Super. 1998);

*and see Johnson v. Lewis*, 870 A.2d 368 (Pa. Super. 2005). These holdings may still retain persuasive value, but the custody criteria upon which these cases were decided have been assimilated into the § 5328(a) analysis. **See P.J.P. v. M.M.**, 2018 Pa. Super. 100, 2018 WL 1979832 (Pa. Super. April 27, 2018) (holding that the shared custody factors set forth in **Wiseman v. Wall**, 718 A.2d 844 (Pa. Super. 1998), which predated the 2011 amendments to the custody law, assimilated into the custody factors set forth in 23 Pa.C.S.A. § 5328(a)); **see also M.J.M. v. M.L.G.**, 63 A.3d 331, 339 (Pa. Super. 2013)("We simply cannot graft the judicially-created primary caretaker doctrine on to the inquiry that the legislature has established, and so we conclude that the primary caretaker doctrine, insofar as it required positive emphasis on the primary caretaker's status, is no longer viable.").

As such, Father cites no binding authority beyond § 5328(a)(12) to support his claim. But more to the point, Father assumes a false proposition; in reality, the trial court did not deprive Father of custody because he utilized the Paternal Grandmother to help get the child to school.

Section 5328(a)(12) recognizes that the custodial parent is in many ways a single parent, who must make alternative child care arrangements. Certainly this factor is not designed to punish working parents, particularly those children who have children with special needs. But surely there is a difference between hiring a nanny when the parent has to work the nightshift, as was the case in **Johnson,** and allowing the childcare provider to fulfill all parental obligations while the parent resides in a completely different home

from the child. Given the supporting facts, the trial court was within its discretion to conclude that Father chose to delegate his parental role to Paternal Grandmother. Father suggests he was well within his rights to make this choice under §5328(a)(12). He is mistaken. The trial court did not award primary custody to Mother because it believed the child would be better off with Mother than with a babysitter. The basis for the decision was the court's conclusion that Father abdicated his parental role. This conclusion was supported by the record.

Not only did the court articulate reservations about Father's role as a caregiver, but the court also identified the quality of his custodial time as being less beneficial to the child than the time the child spent in Mother's custody. For instance, the court heard testimony that the subject child desires to fulfill her role of being the "big sister" to Mother's other child, a half-sibling E.W., age 4. Because the child feels the need to be an example, the child wants to do everything first. In this sense, the younger sibling keeps the child on her toes. Their relationship has the effect of advancing the child's own development. Although Father is quick to point out that the child articulated exasperation with her half-sister ("she drives me nuts"), the court was still within its discretion to find the sibling relationship factor in favor of Mother. **See** 23 Pa.C.S.A. § 5328(a)(6).

In another example of Mother's custodial time being more advantageous, the trial court noted that Mother takes the child to a personal trainer. Mother testified that Father has frustrated her attempts to coordinate

this therapy, because he does not take the child to appointments that occur on his time.

Finally, in articulating her preference to live with Mother, the child explained during her *in camera* interview that Paternal Grandmother is prone to complete the child's daily tasks for her, e.g. showering. She stated Paternal Grandmother also "drives her nuts."[1] The court determined that Paternal Grandmother's child rearing style was overbearing in light of the developmentally beneficial independence that the child enjoys in Mother's home. Given the differing levels of care at each household, the court placed a fair amount of weight on the child's preference that she live primarily with Mother. **See** 23 Pa.C.S.A. § 5328(a)(7).

In his brief, Father argues that the court should not place such weight on the "ambiguous" testimony of a "neurologically challenged 11-year-old." **See** Father's Brief, at 26. He contends that "the child was not as cognitively and intellectually sound as the court painted her to be." **Id.**, at 27. We have long held, and reaffirm today, that "[t]he weight to be given to a child's preference can best be determined by the judge before whom the child appears." **Cardamone v. Elshoff**, 659 A.2d 575, 583 (Pa. Super. 1995). On

---

[1] Father argues that the trial court abused its discretion by downplaying the child's frustration with her half-sibling while exaggerating her frustration with Paternal Grandmother when the child used the exact same phrase ("she drives me nuts") to describe both. But Father fails to realize that, to the extent these emotions are even the same, the frustration the child has with her half-sibling drives the child toward independence. Conversely, the frustration the child has with Paternal Grandmother hinders her growth.

issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to **observe the proceedings and demeanor of the witnesses**." **K.T. v. L.S.**, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted) (emphasis added).

The trial court determined that the child, despite her limitations, was nevertheless able to express a well-reasoned preference with normal cognitive abilities for an 11-year-old child. **See** T.C.O., at 4-5. The cold record reveals some hesitation in some of the child's answers. But we cannot ascertain whether such hesitation reflected a shy child who was forced to speak with an adult stranger, or a child with limited intellectual functioning, or some combination of both. In delineating its reasons for finding this factor in favor of Mother, the trial court explained:

> It would be easy to say that this child who is 11, because of her developmental delays physically, emotionally, and socially, has some developmental delays intellectually, and she does slightly, but her immature communication with the court in the interview was not – immature wasn't the right word. It was a lack of articulation. She articulated more like a 9 or 10-year-old would, but it was clear to this judge that her cognitive abilities and her ability to think through things is actually quite normal.

> She was able to articulate to me relationships, opinion, so forth, and give reasons. The reasons were not always incredibly articulate, but they made sense, and I find this child's maturity and judgment frankly impressive given the other developmental delays she has.

N.T., 11/15/17, at 266-267.

- 12 -

This explanation from the trial judge exemplifies why we *must* afford discretion to trial judge presiding over these custody cases. In a case like this where parents evidently disagree about the extent of child's intellectual disability, it would be absurd for this Court to substitute its own judgement for that of the trial judge, who was uniquely situated to observe the child.

Like the other findings discussed above, the trial court's summation of the child's preference is supported by the facts. Father's main argument is that the trial court placed the wrong weight on the evidence. Here, too, Father's point is deficient. We have said:

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (citation omitted). In sum, Father disagrees with the weight the trial court placed on the facts yielded by the testimony and evidence presented at trial. Our review of these facts support the trial court's conclusions. As such, we cannot discern any abuse of discretion.

Order affirmed.  Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/28/2018