J-S27017-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| EDWARD GROSS | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| RUTH R. GROSS | : | No. 1043 EDA 2022 | |

Appeal from the Order Entered April 20, 2022
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s): 0C1900271

BEFORE:  STABILE, J., NICHOLS, J., and SULLIVAN, J.

MEMORANDUM BY NICHOLS, J.:              **FILED OCTOBER 12, 2022**

Appellant Edward Gross (Father) appeals from the order granting him partial physical custody and granting Ruth Gross (Mother) primary physical custody of their minor child E.G., born in 2018 (the Child) following a remand from this Court.  Father argues that the trial court abused its discretion in awarding Mother primary physical custody instead of awarding both parties shared physical custody.  Father also contends that the trial court erred by failing to hold Mother in contempt of the interim custody orders.  We affirm.

A previous panel of this Court summarized the factual and procedural history of this matter as follows:

> The parties married in July 2016, the Child was born in 2018, and the parties separated in January 2019.  Thereafter, the parties filed respective custody complaints.  Custody litigation spanned approximately 18 months, resulting in two interim orders, before the custody hearing began in August 2020.[fn1]

[fn1] The COVID-19 pandemic contributed to the protracted litigation.

Those interim orders awarded primary physical custody to Mother, and partial physical custody to Father. Each party originally requested sole physical custody, but Father eventually changed his request to shared custody. [Additionally, on April 29, 2019, Father filed a petition for contempt of the interim custody orders.] During the pendency of the litigation, Father began employment as a high school teacher. Mother worked from the home as a private tutor. Mother lives with the Maternal Grandparents in a two-bedroom apartment in the Center City area of Philadelphia. Father lives approximately 30-45 minutes away in Villanova, where he resides with his fiancée and her two daughters (ages 5 and 7).

Litigation culminated with a final custody hearing, held remotely, over the course of several dates: August 27, 2020; October 29, 2020; February 9-10, 2021; and February 17, 2021. On March 12, 2021, the trial court issued its custody award and delineated its Section 5328(a) findings. By and large, the court determined that the custody factors favored neither parent [and that one custody factor favored Father]. Nevertheless, the court awarded Mother primary physical during the months Father's school was in session; Father's partial physical custody was limited to the 2nd, 3rd, and 4th weekend of each month (Friday afternoon to Monday morning). Father also received the 5th weekend of the month, when applicable, as well as those federal holidays where his school was not in session. During the summer months, however, the court ordered physical custody to be shared, on a week-off-week-on basis. [Additionally, the custody order states that once the Child begins kindergarten, Father's partial physical custody on the weekends shall end on Sunday afternoon instead of Monday morning. The trial court's custody order granted the parties shared legal custody of the Child. Further, in a separate order also dated March 12, 2021, the trial court denied Father's petition for contempt.]

**Gross v. Gross**, 722 EDA 2021, 2021 WL 6110239, at *1 (Pa. Super. filed Dec. 27, 2021) (unpublished mem.) (formatting altered).

On appeal, a prior panel of this Court concluded that "the trial court failed to provide sufficient explanation why a primary/partial award during the non-summer months was in the Child's best interests[,]" and that it failed to provide "sufficient explanation concerning the weight of the evidence[.]" **_Id._** at *4, *7. Therefore, this Court vacated the trial court's order and remanded the matter to the trial court, explaining:

> [This Court] presume[s that] the trial court, having presided over five days of hearings, is confident that its award is still in the Child's best interests. If so, the trial court **shall issue supplemental findings to justify its original custody scheme. Alternatively**, the court **may reconsider its award** and fashion a new order. In either event, no new hearing is necessary. Either party may appeal thereafter.

**_Id._** at *7 (emphases added).

On remand, the trial court issued supplemental findings concluding that that three custody factors[1] favored Mother and reinstated the custody schedule set forth in its March 12, 2021 order. Trial Ct. Order, 2/22/22, at 1-2.

Father simultaneously filed a timely motion for reconsideration and a notice of appeal. In his motion for reconsideration, Father argued that the trial court erred in modifying its analysis of the custody factors and reinstating the previous custody schedule instead of fashioning a new custody schedule based on its original weighing of the factors. Father also claimed that the trial court erred by failing to hold Mother in contempt. On March 15, 2022, the

_____

[1] Specifically, 23 Pa.C.S. § 5328(a)(3), (10), and (12).

trial court granted Father's motion for reconsideration and vacated its February 22, 2022 order. Father subsequently filed a praecipe to discontinue that appeal.

The trial court heard argument on April 11, 2022,[2] but did not hear additional evidence. On April 20, 2022, the trial court issued supplemental findings of fact and conclusions of law. The trial court restated its conclusions from its February 22, 2022 order that three custody factors favored Mother. Trial Ct. Order, 4/20/22, at 1-3. Additionally, the trial court concluded that two more custody factors[3] favored Mother. *Id.* at 1-2. The trial court reinstated the custody schedule set forth in its March 12, 2021 order. *Id.* at 3.

Father contemporaneously filed a timely notice of appeal and a Pa.R.A.P. 1925(a)(2)(i) statement of errors complained of on appeal. The trial court filed its Rule 1925(a) opinion addressing Father's issues.

Father raises the following issues for our review, which we reorder and restate as follows:

1. Whether the trial court erred by failing to find Mother in contempt of the previous custody orders.

2. Whether the trial court erred on remand by concluding that five custody factors favored Mother and reinstating the custody

---

[2] The trial court states in its opinion that it heard argument from the parties on April 11, 2022, but a transcript of those proceedings does not appear in the certified record. The absence of that transcript does not impair our appellate review.

[3] Specifically, 23 Pa.C.S. § 5328(a)(4) and (11).

schedule from its March 12, 2021 order instead of fashioning a new custody schedule to conform with the trial court's original findings of fact.

3. Whether the trial court erred by reinstating the custody schedule from its March 12, 2021 order rather than granting Mother and Father shared physical custody of the Child year-round.

4. Whether the trial court erred by granting Father's motion for reconsideration of the February 22, 2022 order and forcing the discontinuance of Father's appeal of same only to update its findings of facts to be more in line with the trial court's original March 12, 2021 order.

5. Whether the trial court erred by granting Mother primary physical custody and Father limited partial physical custody of the Child during the school year rather than effectuating a custody schedule which provided the parties share physical custody equally year-round as they do in the summer months under the order.

6. Whether the trial court erred by reducing Father's partial physical custody once the Child begins school by taking away his Sunday overnight on his custodial weekends during the school year.

7. Whether the trial court erred when it crafted Father's partial physical custody schedule, which results in Father spending one eleven-day period each month away from the Child during the school year.

Father's Brief at 4-6.

## Contempt

In his first issue, Father argues that the trial court erred by failing to hold Mother in contempt. Father's Brief at 51. Specifically, Father refers to the trial court's March 12, 2021 custody order which stated that on several occasions, Mother failed to make the Child available for telephone calls as required by the interim custody order. *Id.* Further, Father also notes that the trial court found that on Yom Kippur of 2020, Mother delayed the custody exchange with Father because the Child was sleeping. *Id.* Father concludes

that the trial court should have held Mother in contempt for violating the interim custody orders.

Both Mother and the trial court note that Father did not appeal the trial court's March 12, 2021 order denying his petition for contempt. **See** Mother's Brief at 30; Trial Ct. Op., 5/18/22, at 17-18.

Before we address the merits of Father's contempt argument, we must first address whether we have jurisdiction to review his claim. It is well established that "the question of subject matter jurisdiction may be raised at any time, by any party, or by the court *sua sponte*." **B.L. v. T.B.**, 152 A.3d 1014, 1016 (Pa. Super. 2016) (citation omitted and formatting altered). "Whether a court has subject matter jurisdiction is a question of law, for which our standard of review is *de novo* and our scope of review plenary." **Id.** (citation and footnote omitted).

Our Supreme Court has explained that generally, "[t]aking one appeal from separate judgments is not acceptable practice and is discouraged. It has been held that a single appeal is incapable of bringing on for review more than one final order . . . ." **Gen. Elec. Credit Corp. v. Aetna Cas. & Sur. Co.**, 263 A.2d 448, 452 (Pa. 1970).

Further, the Note to Rule of Appellate Procedure 341 states:

> A party needs to file only a single notice of appeal to secure review of prior non-final orders that are made final by the entry of a final order. Where, however, one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed.

Pa.R.A.P. 341, Note.

Here, Father's notice of appeal stated that he was appealing from the trial court's April 20, 2022 order reinstating its March 12, 2021 custody order. However, Father did not file a notice of appeal from the trial court's March 12, 2021 order denying his petition for contempt. Therefore, while we decline to quash Father's appeal, we conclude that this Court lacks jurisdiction to consider his contempt claim because Father did not file a notice of appeal from that order. **See Gen. Elec. Credit Corp.**, 263 A.2d at 452; Pa.R.A.P. 341.

**Compliance with this Court's Remand Order**

In his next two issues, Father argues that the trial court erred in amending its conclusions about the Section 5328(a) custody factors following remand from this Court. Father's Brief at 22-24. Specifically, Father claims that "[i]nstead of issuing an analysis that explained the trial court's original determination of the factors, the trial court chose to change five factors from neutral to Mother's favor to conform [to] the original custody determination." **Id.** at 24. Father contends that the trial court should have "fashion[ed] an order for shared physical custody, which would have been consistent with the trial court's original findings[.]" **Id.**

This Court has held that "[w]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived." **In re W.H.**, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (citations omitted); **see also** Pa.R.A.P. 2119(a) (providing that the argument section of appellate brief

- 7 -

shall contain discussion of issues raised therein and citation to pertinent legal authorities). Here, Father does not cite any legal authority to support his claim that the trial court failed to comply with this Court's mandate on remand by amending its original findings, therefore, these issues are waived. **See W.H.**, 25 A.3d at 339 n.3; Pa.R.A.P. 2119(a).

## Motion for Reconsideration

Next, Father argues that the trial court erred by granting his motion for reconsideration and modifying its supplemental findings of fact to find two additional custody factors in favor of Mother. Father's Brief at 20-22. Specifically, Father notes that after the trial court entered its February 22, 2022 order, he filed both a motion for reconsideration and a notice of appeal. *Id.* at 20-21. Father argues that because the trial court did not grant him the relief he requested, its grant of reconsideration unnecessarily delayed proceedings because it forced the discontinuance of his prior appeal and required him to file a second notice of appeal in this matter. *Id.* at 21-22.

Following our review, we conclude that Father has failed to adequately develop his claim for appellate review with citations to relevant authorities. In support of his claims, Father presents only bald assertions that the trial court abused its discretion and unduly delayed these proceedings by granting his motion for reconsideration. For these reasons, we conclude that Father has waived this claim for appellate review. **See W.H.**, 25 A.3d at 339 n.3; Pa.R.A.P. 2119(a).

**Custody Determination**

Father's remaining issues relate to the trial court's custody arrangement, which awarded Mother primary physical custody and gave Father partial physical custody during the school year. Father's Brief at 24-51. First, Father claims that the trial court erred by concluding that five custody factors favored Mother. *Id.* at 24-39. Second, Father argues that the trial court erred by ordering that Father's custodial time from Sunday evening to Monday morning would end when the Child begins attending school. *Id.* at 39-44. Third, Father argues that the trial court erred in fashioning a custody schedule that resulted in a ten or eleven-day period per month where the Child does not have any physical contact with Father. *Id.* at 44-51.

Custody Factors

Father argues that the trial court abused its discretion in its analysis of the 23 Pa.C.S. § 5328(a) custody factors and challenges the weight that the court placed on certain factors.[4] Father's Brief at 24-39. Father contends that the trial court abused its discretion by impermissibly concluding that the third, fourth, tenth, eleventh, and twelfth custody factors favor Mother. *Id.* at 30-39. Specifically, Father argues that the trial court erred in concluding that several custody factors favor Mother because Mother works from home while Father works outside the home. *Id.* at 35-36, 39 (citing, *inter alia*, *Gerber*

---

[4] For ease of analysis, we will not discuss custody factors from Section 5328 that Father does not contest on appeal.

*v. Gerber*, 487 A.2d 413, 416 (Pa. Super. 1985); *Johnson v. Lewis*, 870 A.2d 368, 374 (Pa. Super. 2005)). Father additionally claims that there is no support in the record for the trial court's conclusions regarding the third, tenth, and eleventh custody factors. *Id.* at 30-31, 32-33.

Father also argues that the trial court erred in weighing the thirteenth custody factor, the level of conflict between the parties. *Id.* at 26-30. Father claims that the trial court failed to consider the testimony demonstrating that Mother and maternal grandparents are hostile towards Father and that shared physical custody is necessary to counteract the Child's exposure to these "negative feelings towards Father[.]" *Id.* at 30. Lastly, Father argues that the trial court should have awarded shared physical custody because, despite the animosity between the parties, "only a minimal degree of cooperation between the parents is required for a shared custody arrangement." *Id.* at 26 (citing *Wiseman v. Wall*, 718 A.2d 844 (Pa. Super. 1998)).

Our standard and scope of review of custody orders are as follows:

The appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

On issues of credibility and weight of the evidence, we defer to the findings of the trial court who has had the opportunity to observe the proceedings and demeanor of the witnesses.

- 10 -

> The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (citations omitted and some formatting altered). "The test is whether the evidence of record supports the trial court's conclusions" and whether the conclusions are grounded in a comprehensive evaluation of the best interest of the child. *Id.* (citation omitted).

Section 5328(a) provides, in relevant part, as follows:

**(a) Factors.—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

* * *

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

* * *

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by

- 11 -

another party is not evidence of unwillingness or inability to cooperate with that party. . . .

23 Pa.C.S. § 5328(a). Moreover, "[t]he court shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S. § 5323(d). "[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen factors [from Section 5328(a)] prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.*, 65 A.3d 946, 955 (Pa. Super. 2013).

Further, this Court has explained

In expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations. A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d).

*A.V.*, 87 A.3d 823 (citations omitted and formatting altered).

"It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *E.B. v. D.B.*, 209 A.3d 451, 468 (Pa. Super. 2019) (citation omitted).

In support of his instant claims, Father relies on several cases that pre-date the enactment of Section 5328(a). In *Gerber*, this Court stated that "a parent's work schedule may not deprive that parent of custody if suitable arrangements are made for the child's care in his or her absence." *Gerber*, 487 A.2d at 416 (citations omitted). In *Johnson*, the mother argued that the trial court erred in awarding shared physical custody on a weekly rotating

basis because the father may be required to work nights in the future. *Johnson*, 870 A.2d at 374. The mother claimed that the trial court "should have made provision[s] for [the] mother to have physical custody during the periods when [the] father works the night shift." *Id.* (footnote omitted). In affirming the custody arrangement on appeal, this Court explained that shifting custody to the mother while the father was at work would be "overly disruptive, unpredictable, and confusing" for the child and that "[m]aintaining the stable consistency of weekly shifts in physical custody, even if [the] father should have to alter his work schedule," was reasonably in [the child's] best interest. *Id.* at 375 (footnote omitted).

In *Wiseman*, this Court discussed four factors that a trial court must consider before awarding the parents shared physical custody. *Wiseman*, 718 A.2d at 848. However, this Court subsequently held that the 2010 enactment of Section 5328(a) rendered prior decisions of this Court, such as *Wiseman*, obsolete. *See P.J.P. v. M.M.*, 185 A.3d 413, 419-20 (Pa. Super. 2018); *see also M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013) (stating that this Court "simply cannot graft the judicially-created primary caretaker doctrine on to the inquiry that the legislature has established [in Section 5328(a)], and so we conclude that the primary caretaker doctrine, insofar as it required positive emphasis on the primary caretaker's status, is no longer viable"). However, the *P.J.P.* Court acknowledged that decisions of this Court that predate Section 5328 may retain persuasive value to the extent that they do not contradict the plain language of the statute. *P.J.P.*, 185 A.3d

at 420 (noting that the four **Wiseman** factors "are assimilated into Section 5328(a)").

More recently, this Court considered a parent's argument that the trial court had "penalized" him for working outside the home in making its custody determination. **Ahrens v. Ahrens**, 631 MDA 2021, 2022 WL 390678, at *8 (Pa. Super. filed Feb. 9, 2022) (unpublished mem.).[5] This Court rejected the father's arguments, reasoning that the father was asking this Court to reweigh the trial court's factual findings, which this Court may not do. **Id.** The **Ahrens** Court concluded:

> Contrary to [the f]ather's assertion, the trial court did not "penalize" [the f]ather because he works away from the home. Rather, the trial court credited [the f]ather's testimony that while he works away from the home on occasion, he is able to make childcare arrangements. The trial court simply found that regarding this factor, [the m]other's ability to care for the children outweighed [the f]ather's ability because [the m]other remained at home full-time and had four adult siblings and other family members who could assist her in providing childcare.

**Id.** at *10. The **Ahrens** Court did not discuss the continued validity of decisions such as **Gerber** and **Johnson** following the enactment of Section 5328.

Here, the trial court first addressed Section 5328(a)(3), concerning parental duties performed by each party on behalf of the Child, as follows:

---

[5] **See** Pa.R.A.P. 126(b) (providing that unpublished memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

This factor favors Mother. Mother does not work outside the home, she lives with her parents, and she performs all parental duties when [the] Child is in her care. Father works outside the home full-time as a high school teacher during the school year. While he is at work, Father does not personally perform parental duties. While Father is able to make appropriate childcare arrangements for [the] Child while Father is at work, the court determines that it is in the best interest of [the] Child, who had his third birthday two weeks prior to the entry of the March 12, 2021 order, to be in the care of his Mother rather than that of a third-party.

\* \* \*

The fact that one parent is available to spend more waking hours with a child than is the other parent may properly be considered by the court in making its award of physical custody. ***See*** [***Johnson***, 870 A.2d at 375] (stating that case law holds that "changes in custody can be uselessly disruptive when the parent to whom custody is newly granted [here Father] will spend waking time with the child equal to or less than that spent by the fit parent who previously had custody [here Mother]"). ***See also*** [***Ahrens***, 2022 WL 390678 at *10] (responding to a father's assertion that the trial court "penalized" him because he works away from the home, "the trial court credited Father's testimony that while he works away from the home on occasion, he is able to make childcare arrangements. The trial court simply found that regarding this factor, Mother's ability to care for the children outweighed Father's ability because Mother remained at home full-time and had four adult siblings and other family members who could assist her in providing childcare."). Here, Father has not been deprived of custody.

\* \* \*

As is appropriate, the court here considered Father's work schedule in rendering a custody award granting him partial physical custody during the non-summer months and shared physical custody in the summer.

Trial Ct. Op. at 5, 12-13 (some citations omitted and some formatting altered).

Based on our review of the record, we conclude that there is evidence in the record to support the trial court's conclusions. Father and Mother both

- 15 -

testified that they each perform parental duties. ***See*** R.R. at 76a, 162a-64a, 294a-96a, 392a-93a, 406a.[6] Maternal Grandparents testified that Mother performs parental duties for the Child while he is in their home. ***See id.*** at 556a, 572a. Paternal Grandmother and Father's fiancée testified that Father cares for the Child during his custodial time. ***See id.*** at 484a, 535a, 538a.

Further, as noted previously, both ***Gerber*** and ***Johnson*** were decided before the General Assembly enacted Section 5328. ***See P.J.P.***, 185 A.3d at 419-20. However, as this Court explained in ***Ahrens***, the trial court may weigh custody factors as favoring the parent who works from home without "penalizing" the other parent who works outside the home. ***See Ahrens***, 2022 WL 390678, at *10. This includes circumstances where the working parent can make appropriate childcare arrangements. ***See id.*** Insofar as Father is challenging the trial court's credibility determinations and the weight it assigned to the evidence, this Court defers to those determinations. ***See A.V.***, 87 A.3d at 820. Therefore, we conclude that the trial court did not abuse its discretion in finding that the third custody factor favors Mother.

---

[6] We may cite to the parties' reproduced record for the parties' convenience.

Additionally, the notes of testimony from the February 9, 10, and 17, 2021 hearings do not appear in the certified record, but Father included them in his reproduced record. Mother does not object to the accuracy of the reproduced record and cites to it in her brief. Accordingly, we will consider these documents in our review of this matter. ***See C.L. v. M.P.***, 255 A.3d 514, 519 n.3 (Pa. Super. 2021) (*en banc*) (noting that "[w]hile the notes of testimony from this hearing are not included as part of the certified record, they are included as part of the reproduced record. As their veracity is not in dispute, we rely on the copy contained within the Reproduced Record" (citation omitted)).

The trial court next addressed Section 5328(a)(4), concerning the need for stability and continuity in the Child's education, family life and community life, as follows:

> This factor favors Mother. [The] Child has been in Mother's primary physical custody since the parties' separation. As a three-year old, [the] Child is entirely dependent upon his parents to provide stability and continuity in his family life, it is in [the] Child's best interest for him to have the stability provided by his being with Mother during the days that Father is unavailable to be with [the] Child due to Father's work schedule. It is in [the] Child's best interest for him to have the stability provided by remaining in Mother's care during the entire days that Father works. It would not be in [the] Child's best interest to be with Mother just during the time that Father works and then to be with Father for the remainder of that day and overnight until the next morning. As the parties' residences are approximately a 30 to 45 minute drive apart, shuttling [the] Child back and forth on a daily basis would be antithetical to his need for stability in his daily life. **See** [**Johnson**, 870 A.2d at 375] (stating that case law holds that "changes in custody can be uselessly disruptive when the parent to whom custody is newly granted [here Father] will spend waking time with the child equal to or less than that spent by the fit parent who previously had custody [here Mother]").

Trial Ct. Op. at 5-6 (some citations omitted).

Father argues that the trial court erred in the weight it assigned to the evidence in determining that this factor favors Mother. As a party, Father cannot dictate the weight the trial court gives to the evidence. **See A.V.**, 87 A.3d at 820 (stating that the parties cannot dictate the weight the trial court places on the evidence; the paramount concern is the child's best interests). Therefore, we discern no abuse of discretion with respect to the trial court's conclusion that the fourth custody factor favors Mother.

The trial court next addressed Section 5328(a)(10), concerning which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the Child, as follows:

> This factor favors Mother. Since Mother has more time to spend with [the] Child on a daily basis, it is she who is more likely to attend to [the] Child's daily physical, emotional, developmental, educational and special needs.

Trial Ct. Op. at 6 (citation omitted).

As stated above, our review of the record indicates there is evidence to support the trial court's conclusions regarding Mother attending to the Child's daily needs. **See** R.R. at 392a-93a, 406a, 556a, 572a. Further, Maternal Grandmother testified she babysits the Child while Mother is working as a tutor. **See id.** at 556a. To the extent that Father challenges the weight that the trial court assigned to the evidence regarding this factor, Father is not entitled to relief on this claim. **See A.V.**, 87 A.3d at 820.

The trial court next addressed Section 5328(a)(11), concerning the proximity of the residences of the parties, as follows:

> Mother and [the] Child reside with Mother's parents in their Center City Philadelphia home. Father lives in Villanova. Their residences are approximately a 30 to 45 minute drive apart. The distance between the residences, combined with Father's daily work schedule, would cause shared physical custody during the school-year to be contrary to the best interest of [the] Child. Daily transfer of [the] Child from Mother to Father in the afternoon and from Father to Mother the following morning would cause undue disruption for [the] Child.

Trial Ct. Op. at 6 (citing Trial Ct. Order, 4/20/22, at 2).

Father argues that the trial court erred in concluding that parties would be unable to provide transportation for the Child. However, the trial court did not state that the parties were unable to provide transportation for custody exchanges. Instead, the trial court found that constant custody exchanges would be unduly disruptive for the Child. **See id.** As for Father's arguments regarding which parent can better care for the Child, we discern no abuse of discretion in the trial court's conclusions for the reasons stated above regarding the third and fourth custody factors.

The trial court next addressed Section 5328(a)(12), concerning each party's availability to care for the child or ability to make appropriate child-care arrangements, as follows:

> This factor favors Mother. Mother does not work outside the home and she lives with her parents. Father works outside the home full-time as a high school teacher during the school year. While he is at work, Father does not personally perform parental duties. While Father is able to make appropriate child-care arrangements for [the] Child while Father is at work, the court determines that it is in the best interest of [the] Child, who had his third birthday two weeks prior to the entry of the March 12, 2021 order, to be in the care of his mother rather than that of a third-party. **See** [**Ahrens**, 2022 WL 390678 at *10] (responding to a father's assertion that the trial court "penalized" him because he works away from the home, the trial court credited [the f]ather's testimony that while he works away from the home on occasion, he is able to make childcare arrangements. The trial court simply found that regarding this factor, [the m]other's ability to care for the children outweighed [the f]ather's ability because [the m]other remained at home full-time and had four adult siblings and other family members who could assist her in providing childcare.").
>
> Father[] cites [**Gerber**, 487 A.2d at 416] for the proposition that "the fact that a parent must work is not a factor that may be used

to deprive the parent of custody where adequate arrangements are made for the child's care in the parent's house, and that a parent's work schedule may not deprive that parent of custody if suitable arrangements are made for the child's care in his or her absence. This argument ignores the obligation of the trial court to render a custody decision in the best interest of the child. Father has not been deprived of custody. As is appropriate, the court here considered Father's work schedule in rendering a custody award granting him partial physical custody during the non-summer months and shared physical custody in the summer.

Trial Ct. Op. at 6-7 (some citations omitted).

As previously stated, we agree with the trial court that it may weigh custody factors as favoring the parent who works from home without "penalizing" the other parent who works outside the home. *See Ahrens*, 2022 WL 390678, at *10. To the extent that Father challenges the weight the trial court assigned to the evidence regarding this factor, Father is not entitled to relief on this claim because the trial court's determination is properly within its discretion and is supported by the record. *See A.V.*, 87 A.3d at 820. Therefore, we conclude that the trial court did not abuse its discretion in concluding that the twelfth custody factor favors Mother.

The trial court next addressed Section 5328(a)(13), concerning the level of conflict between the parties and the willingness and ability of the parties to cooperate with one another, as follows:

There is currently a high level of conflict between the parties. Neither party displays much willingness to cooperate with the other. Their willingness to cooperate is hampered by mutual distrust and animosity. Mother has employed social media on the internet to label Father as an abuser. In her testimony, Mother stated that she hates Father, and she characterized him as a pathological liar and a bad influence on [the] Child.

At times, Mother has not made [the] Child available for telephone calls per the current court order. At times, Father is verbally hostile towards Mother at custody exchanges. On the occasion of Yom Kippur 2020, Mother delayed Father's custodial time by more than one hour because [the] Child was taking his afternoon nap. Father called [the] police in response. These instances of failure to cooperate serve to perpetuate the cycle in which the parties display mutual disregard for each other.

The court expects that the conflict between the parties will diminish with the institution of this final order. As they and [the] Child become accustomed to the schedule established herein and as they engage in co-parenting counseling, the framework for enhanced cooperation is established and the opportunity for development of a productive co-parenting relationship is facilitated. Each party's adherence to the terms of the order may serve to lessen the mistrust and tension that currently exists between them.

Trial Ct. Order, 3/12/21 at 7-8.

Father challenges the trial court's weighing of the evidence regarding this factor. As stated above, Father is not entitled to relief on his weight claim. *See A.V.*, 87 A.3d at 820. Further, to the extent Father relies on *Wiseman* to conclude that the trial court erred in declining to award shared physical custody, his reliance is misplaced. *See P.J.P.*, 185 A.3d at 419-20 (explaining that Section 5328(a) has superseded *Wiseman*). Therefore, Father is not entitled to relief.

### Custody Schedule

Father challenges the section of trial court's order stating that "once the Child enters kindergarten, Father will lose his Sunday overnights" so that the Child will have "proper rest and continuity of his routine during the school week." *Id.* at 39-44 (citations omitted). In support, Father contends that the

- 21 -

trial court improperly "relied on a presumption that children of school age should be with the primary custodian on school nights."  *Id.* at 44 (citing *B.C.S. v J.A.S.*, 994 A.2d 600 (Pa. Super. 2010)).

Father also argues that the trial court erred in fashioning a custody schedule that resulted in a ten or eleven-day period per month where the Child does not have any physical contact with Father.  *Id.* at 44-51.  Father contends that it is in the Child's best interests to have "regular and continuing contact with both parents" especially because the Child is four years old.  *Id.* at 50.

In *B.C.S.*, the trial court awarded the mother primary physical custody, explaining that "the courts in York County have often provided that primary majority custody situations are best suited for children of school age." *B.C.S.*, 994 A.2d at 605 (citation and quotation marks omitted).  On appeal, this Court expressly disapproved of "the trial court's reliance on York County Practice that primary majority custody situations are best suited for children of school age[]" because the law requires a "**fact-specific**, **case-by-case** analysis of all factors affecting the child's best interest in custody proceedings, any presumption of primary physical custody for school-age children is completely unfounded."  *Id.* (citation and quotation marks omitted, emphasis in original).

Here, the trial court explained that Father's claims regarding the custody schedule "constitute . . . impermissible attempt[s] to dictate the amount of weight the trial court placed on the evidence."  Trial Ct. Op. at 14; *see also id.* at 15.  The trial court further explained that it

considered it to be in [the Child's] best interest to spend the night before attending school to be with the parent who has custody during the entire school week. While each party may be equally likely to attend to [the Child's] daily educational needs when [the Child] is in that parent's custody, the court directed that [the Child] be at one home on most evenings before attending school the following day to best ensure that [the Child] has proper rest and continuity of his routine during the school week.

*Id.* at 14-15.

To the extent Father challenges the weight of the evidence or the trial court's consideration of the custody factors, he is not entitled to relief because the trial court's decision is within its discretion and is supported by the record. *See A.V.*, 87 A.3d at 820; *see also E.B.*, 209 A.3d at 468 (stating that "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case").

Further, although Father argues that the trial court relied on a presumption that school-age children should be with the parent with primary physical custody, that argument is belied by the record. As noted previously, the trial court concluded that it was in the Child's best interest to be with Mother during the school year, as she is "the parent who has custody during the entire school week." Trial Ct. Op. at 14. The trial court did not refer to any regular practice of awarding primary custody to one parent for school age children when making its custody determination.[7] *Cf. B.C.S.*, 994 A.2d at 605

---

[7] *B.C.S.* predates the enactment of Section 5328. Insofar as the *B.C.S.* Court's holding that trial courts cannot rely on local practice, and instead must engage in a fact-specific, case-by-case analysis of the best interests of the child is consistent with Section 5328, it remains persuasive authority. *See P.J.P.*, 185 A.3d at 419-20.

(disapproving of the York County practice regarding primary physical custody for school-aged children).  For these reasons, Father is not entitled to relief.

After review, we find no abuse of discretion or error of law in the trial court's custody order.  Accordingly, we affirm the trial court's April 20, 2022 order.

Order affirmed.

Judge Sullivan joins the memorandum.

Judge Stabile concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/12/2022